519 A.2d 442

**COMMONWEALTH of Pennsylvania**

v.

**Ronald McCORMICK, Appellant.**

Superior Court of Pennsylvania.

Argued Sept. 10, 1986.

Filed Dec. 8, 1986.

Paul R. Gettleman, Pittsburgh, for appellant.

Kemal A. Mericli, Assistant District Attorney, Pittsburgh, for Com., appellee.

Before BROSKY, ROWLEY and POPOVICH, JJ.

## OPINION OF THE COURT

ROWLEY, Judge:

This is an appeal from a judgment of sentence of six to twelve years imprisonment imposed following appellant's conviction by a jury of two counts of robbery. Appellant raises two issues on appeal: 1) was trial counsel ineffective for (a) failing to request a hearing on the after-discovered alleged prejudice of several jurors and by (b) failing to call certain witnesses to discredit the identification of appellant; and 2) was his constitutional right of equal protection violated when all three black veniremen called as potential jurors were peremptorily challenged by the prosecution. We remand for a hearing on appellant's equal protection claim.

### I. Ineffective Assistance of Counsel

In assessing appellant's claims of ineffectiveness, we must determine whether the issue underlying appellant's claim of ineffectiveness is of arguable merit. If the court finds that the claim has merit, then the inquiry shifts to whether the course chosen by counsel had some reasonable basis directed at promoting the appellant's interests. Finally, if the court finds that there was no reasonable basis for counsel's actions, then the court must determine whether counsel's errors so prejudiced appellant's defense as to deny him a fair trial. *Commonwealth v. Pierce*, 345 Pa.Super. 324, 498 A.2d 423 (1985).

 

## A.

█ Appellant, who is black, first claims that counsel was ineffective because he failed to request a hearing when he learned, following the verdict, that some of the jurors were allegedly biased against blacks. At a post-trial hearing concerning the claim of counsel's ineffectiveness, one of the jurors, Mrs. Healy, testified [1] that based on certain statements made during jury deliberations, she thought four of the jurors were prejudiced against blacks and had determined the credibility of some of the witnesses based on their race. Mrs. Healy testified that on *voir dire*, none of the jurors admitted that race would affect their deliberations. However, Mrs. Healy also testified that when she confronted the jury members with her belief that they were racially prejudiced, they denied her allegations. The record shows that neither Mrs. Healy, nor anyone else, specifically identified what racially discriminatory statements the other jurors made. Appellant also did not present the testimony of the jurors who allegedly were biased. The allegations that racially discriminatory remarks were made during jury deliberations by jurors and that some jurors were racially prejudiced were not substantiated. Furthermore, Mrs. Healy herself admitted that the jurors who were allegedly biased had denied such bias. Therefore, the trial court found that appellant had shown neither bias nor prejudice. We agree that appellant has not shown any merit to his underlying claim of ineffectiveness.

█ Furthermore, counsel testified that he did not request a hearing because it was his understanding of the law that he could not call a juror to testify to impeach the other jurors under the circumstances of this case. The general rule is that a juror may not impeach his or her own verdict after the jury has been discharged, but discharged jurors can testify regarding *outside* influences during their deliberation. *Commonwealth v. Syre*, 348 Pa.Super. 110, 501 A.2d 671 (1985); *Commonwealth v. Fuller*, 336 Pa.Super.

---

1. The issue of the admissibility of Mrs. Healy's testimony was raised at the hearing but was never resolved by the trial court.

507, 485 A.2d 1197 (1984) and cases cited therein. Because there is no allegation that there were extraneous facts, evidence, or opinions relayed to the jury which might have influenced it, under the general rule, neither Mrs. Healy nor any of the other jurors should have testified. When assessing counsel's ineffectiveness, we must follow the law as defense counsel knew it at the time of trial. *Commonwealth v. Triplett*, 476 Pa. 83, 381 A.2d 877 (1977); *Commonwealth v. Bradley*, 332 Pa.Super. 99, 480 A.2d 1205 (1984). Considering that there was no law allowing a juror to impeach his own verdict, counsel's failure to request a hearing was reasonably based. Therefore, even if there were merit to appellant's underlying claim, we would not find counsel to have been ineffective.

## B.

Appellant's second assertion of ineffectiveness of counsel is that counsel should have called the two police officers who received the descriptions of the two robbers from the complaining witnesses and appellant's brother, Tyrone, to discredit the identification of appellant as the gunman. The original written police description of the robbers depicted the gunman as being approximately 5'7" and 170 pounds. At the time of his arrest, appellant was 5'11" and 145 pounds. Appellant argues that counsel should have called the police officers to testify to this initial description because it was so different from appellant's own physical characteristics. Appellant also argues that counsel should have called Tyrone to the stand so that the jury could see him since Tyrone's physique more closely fit the initial description of the gunman.

■ Trial counsel testified that he did not call the police officers because a third police officer, Officer Hart, had already testified in a way which minimized the discrepancy in weight and height such that there was no issue left to argue to the jury. Officer Hart testified that the police officers who wrote the description of the robbers established the precise figures of 5'7" and 170 pounds from the

victims' demonstration with their hands of the robbers' size. When one of the police officers reviewed the written report with one of the victims, the victim told him that the gunman was 5'11". Considering the evidence concerning the initial police report, the identification of appellant, and counsel's stated reason for not calling the two policemen as witnesses, we find that appellant's claim of error is without merit and that counsel's action had a reasonable basis. Therefore, counsel was not ineffective.

Appellant's argument that his brother Tyrone should have been called as a witness is also without merit. At an *in camera* hearing, Tyrone affirmatively invoked his Fifth Amendment right to remain silent. The Commonwealth may not call a witness when it is known that he actually will invoke the Fifth Amendment privilege against self-incrimination. *Commonwealth v. Tann*, 500 Pa. 593, 459 A.2d 322 (1983). There was no question here that Tyrone would invoke his Fifth Amendment rights if he were called to the stand in the presence of the jury. Although it would have been appellant and not the Commonwealth who would have called him, the possibility of prejudice to the defendant as a result of the jury seeing Tyrone invoke the Fifth Amendment coupled with counsel's expressed concerns that the jury might perceive Tyrone as the accomplice whose existence had previously been suggested in the trial, thereby bolstering the testimony of the Commonwealth's witnesses, provide a reasonable basis for not calling Tyrone. Therefore, we do not find counsel to have been ineffective.

## II. Use of Peremptory Challenges

During jury selection, the Commonwealth peremptorily struck three of the four black veniremen in the panel. The fourth black venireman was not reached during *voir dire*. Thus, appellant, was tried by an all-white jury. Appellant objected to the allegedly racially discriminatory use by the Commonwealth of its peremptory challenges, but his objection was overruled. Again in his post-trial motions, appellant raised the issue of discrimination in selection of the

jury, but he was denied relief. On appeal, appellant argues that he has established a *prima facie* case of racial discrimination under *Batson v. Kentucky*, —— U.S. ——, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), which was decided while this case was pending on appeal, and therefore the case should be remanded for a hearing to determine whether the Commonwealth's use of peremptory challenges to strike the only black veniremen reached on *voir dire* was racially discriminatory and a denial of appellant's equal protection rights. The Commonwealth argues that *Batson* should not be applied retroactively to appellant's case which was pending on appeal when *Batson* was decided.

In *Batson*, the Supreme Court re-examined its rule announced in *Swain v. Alabama*, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965) concerning the evidentiary burden of a defendant who claims that the government's use of peremptory challenges was racially discriminatory and therefore denied him equal protection. Under *Swain*, a defendant had to prove that the prosecution had established a pattern, in numerous cases, of peremptorily striking veniremen of a particular race in order to establish a *prima facie* case of invidious racial discrimination because the prosecution was entitled to the presumption that in a particular case, its peremptory challenges were properly exercised. In *Batson*, the Supreme Court altered the prerequisites for a defendant to establish a *prima facie* case of intentional discrimination and held that a *prima facie* case could be established based solely on facts pertaining to the defendant's own trial.

The *Batson* requirements for establishing a *prima facie* case of intentional racial discrimination are: 1) that the defendant is a member of a cognizable racial group and that the prosecution used peremptory challenges to remove from the venire members of the defendant's race; 2) that the defendant can rely on the presumption that peremptory challenges to veniremen permit discrimination by those inclined to do so; and 3) that the facts and relevant circumstances raise the inference that the prosecutor used the

peremptory challenges to racially discriminate. *Batson, Id.,* 106 S.Ct. at 1723. Once these three requirements are satisfied, the burden shifts to the prosecution to explain adequately the racial exclusion. *Id.,* at 1721.

In this case appellant has established that he is a member of the black race which is a cognizable racial group. The fact that all of the black veniremen reached on *voir dire* were peremptorily stricken by the Commonwealth raises the inference that the peremptory challenges were used to discriminate. Thus appellant has established a *prima facie* case of racial discrimination under *Batson.* Therefore, if *Batson* is to be given retroactive application, we must remand for a hearing at which the Commonwealth can present evidence adequately to explain the racial exclusion.

Initially, we note that a prior decision of a panel of this Court has already applied *Batson* to a defendant whose conviction was not final at the time of *Batson* and who was pursuing a direct appeal. *Commonwealth v. McKendrick,* 356 Pa.Super. 64, 514 A.2d 144 (1986). In *McKendrick,* the Court did not address the question of retroactive application of *Batson.* Rather, it assumed *sub silento* that *Batson* should be given retroactive application. After discussing the new rule of *Batson,* the Court summarily stated:

> We have applied *Batson* and find appellant has not made a prima facie case.

*McKendrick, Id.,* 356 Pa.Superior Ct. at 76, 514 A.2d 144. Because *McKendrick* did not discuss the issue of retroactivity but because the issue has been raised and thoroughly briefed and argued in this case, we will address it and not simply rely on *McKendrick's* assumption of the retroactive application of *Batson.*

In *Batson* itself, the majority did not address the issue of retroactive application of its decision. However, four of the nine justices opined that the decision should not be given retroactive effect. However, because the issue was not before the Court, we cannot consider the *dictum* concerning retroactivity to be controlling in this case and

neither is it appropriate to guess how those justices who did not express an opinion on the retroactivity issue would have decided the issue had it been properly before them.

Two months after the *Batson* decision, the Supreme Court, by a Per Curiam opinion, held that *Batson* should not be given retroactive application to collateral review of convictions that became final (i.e., appellate rights exhausted) before *Batson* was announced. *Allen v. Hardy,* —— U.S. ——, 106 S.Ct. 2878, 92 L.Ed.2d 199 (1986). However, the instant case is distinguishable from *Allen* because appellant is not seeking collateral review but is pursuing a direct appeal and because his conviction was not final at the time *Batson* was decided.

■ Not only is *Allen* not binding authority on the issue of retroactivity in this case because *Allen* is distinguishable on the facts, but *Allen* is not binding authority because neither the federal nor the state constitution dictate which decisions must be given retroactive effect. *Commonwealth v. Geschwendt,* 500 Pa. 120, 454 A.2d 991 (1982). Therefore Pennsylvania is not compelled to follow the U.S. Supreme Court's decisions on the retroactivity of new decisional law. *Commonwealth v. McFeely,* 509 Pa. 394, 502 A.2d 167 (1985). Although we have considered the analysis of the Per Curiam opinion of the Court in *Allen,* we disagree with some of the conclusions reached therein, and because we are not bound by the Supreme Court's decision, we do not follow it.

■ Several approaches have been used to analyze the propriety of retroactive application of new decisions. The common law approach set forth in *U.S. v. Schooner Peggy,* 5 U.S. (1 Cranch) 103, 2 L.Ed. 49 (1801) is that an appellate court must apply the law as it exists at the time of its decision. Therefore, new decisions always have retrospective application to cases pending at the time of the decision. However, a modified form of the common law approach creates an exception to this rule where the new rule is a "clear break with the past" or where there are constitutional limitations. *U.S. v. Johnson,* 457 U.S. 537,

102 S.Ct. 2579, 73 L.Ed.2d 202 (1982). Alternatively, a court can selectively apply a decision retroactively. Under the selective approach, the court considers: 1) the purpose to be served by the new standard; 2) the extent of reliance by law enforcement authorities on the old standard; and 3) the effect on the administration of justice. *Stovall v. Denno*, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967). Where the purpose of the new standard affects the truth finding function, thereby raising serious questions about the accuracy of prior guilty verdicts, the new rule has been given complete retroactive effect. *Williams v. U.S.*, 401 U.S. 646, 91 S.Ct. 1148, 28 L.Ed.2d 388 (1971).

In recent years, the Pennsylvania Supreme Court has used each of these approaches. In *Commonwealth v. Miller*, 490 Pa. 457, 417 A.2d 128 (1980), the Court quoted and applied the selective retroactivity test of *Stovall*. However, the following year in *Commonwealth v. Brown*, 494 Pa. 380, 431 A.2d 905 (1981) in holding that the new rule [2] regarding a jury charge where insanity is raised as a defense must be applied retroactively, the Court reiterated the common law rule stating:

> our rule in civil cases which applies the law in effect at the time of the appellate decision applies with equal force to criminal proceedings.

*Id.*, 494 Pa. at 384, 431 A.2d at 907.

The following year, 1982, a plurality of the Court followed the U.S. Supreme Court's decision in *Johnson* which was an application of the modified common law rule. *Commonwealth v. Geschwendt*, 500 Pa. 120, 454 A.2d 991 (1982). In *Geschwendt*, the plurality held that its reversal [3] of the Court's prior position regarding jury instruction where the insanity defense is raised constituted the "clearest possible example" of a clear break with the past. *Id.*, 500 Pa. at 131, 454 A.2d at 997. The Court's new rule regarding the insanity defense was therefore not held to be retroactive.

**2.** *See: Commonwealth v. Mulgrew*, 475 Pa. 271, 380 A.2d 349 (1977).

**3.** *See: Commonwealth v. Mulgrew*, 475 Pa. 271, 380 A.2d 349 (1977).

The next year, 1983, the Pennsylvania Supreme Court cited *Brown,* which had espoused the common law approach to the question of retroactivity. *Commonwealth v. Cabeza,* 503 Pa. 228, 469 A.2d 146 (1983). In *Cabeza,* the issue before the Court was the retroactivity of the new rule regarding the scope of cross-examination of character witnesses with regard to mere arrests of the defendant. The Court held:

> where an appellate decision overrules prior law and announces a new principle, unless the decision specifically declares the ruling to be prospective only, the new rule is to be applied retroactively to cases where the issue in question is properly preserved at all stages of adjudication up to and including any direct appeal.

*Id.,* 503 Pa. at 233, 469 A.2d at 148.

In 1985, the Pennsylvania Supreme Court followed the modified common law rule as it had done in its prior plurality decision in *Geschwendt.* *Commonwealth v. Gray,* 509 Pa. 476, 503 A.2d 921 (1985). It held that the decision of the United States Supreme Court in *Illinois v. Gates,* 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983) [4] did not create any new rights for a defendant but simply changed the analysis of the sufficiency of the probable cause allegation in a search warrant. Because the new decision in *Gates* did not create any new rights, none of the defendant's reliance interests were violated, and therefore, the *Gates* decision was held to be retroactive.

In a decision decided the day after *Gray* the Pennsylvania Supreme Court rejected the modified common law approach espoused in *Johnson* (and incidentally followed in *Gray*) and reaffirmed its prior decision in *Miller* which was reached by applying the *Stovall* selective retroactivity test. *Commonwealth v. McFeeley,* 509 Pa. 394, 502 A.2d 167 (1985).

**4.** In *Gates,* the Supreme court held that the *Aguilar* and *Spinelli* test for determining whether an informant's tip establishes probable cause for issuance of a search warrant would be abandoned in favor of a "totality of the circumstances" approach.

Finally, in a recent decision filed October 16, 1986, the Pennsylvania Supreme Court again applied the common law rule reiterated in *Cabeza* and the selective retroactivity test of *Stovall* and held that its decision in *Commonwealth v. Tarver*, 493 Pa. 320, 426 A.2d 569 (1981), concerning the applicability of double jeopardy principles to felony-murder sentencing, was to be given retroactive application only to those cases in which the double jeopardy issue had been preserved and which were on direct appeal when *Tarver* was decided. *Commonwealth v. Harper*, 512 Pa. 155, 516 A.2d 319 (1986).

■ Although it is not clear that Pennsylvania follows any one particular rule for determining the retroactive effect of new decisions, we find that under any of the various standards which the Pennsylvania Supreme Court has applied, *Batson* should be applied retroactively.

First, under the common law rule followed in *Brown, Cabeza,* and *Harper, Batson* would have to be applied retroactively. No language in the *Batson* decision mandates that *Batson* shall not be retroactive, and *Batson* is the current law now when we decide appellant's appeal. Therefore, we should apply *Batson* retroactively to appellant's case.

Secondly, the exception to the common law rule in the modified common law approach followed in *Geschwendt* and *Gray* is inapplicable here. Although the Commonwealth argues that *Batson* is a "clear break with the past" because it overrules prior law as in *Geschwendt, Batson* does not create or diminish any substantive right of either the appellant or the Commonwealth. Rather, it is similar to the new rule applied retroactively in *Gray.* Whereas in *Gray* the new rule merely changed the analysis of the sufficiency of probable cause, here, *Batson* only changes the allocation of the burden of proof. The parties' underlying rights have not been altered. Purposeful racial discrimination by the Commonwealth in the selection of jurors is a principle which has been repeatedly condemned. *Batson, Id.,* 106 S.Ct. at 1716. By announcing a new test for a *prima facie* case of

invidious racial discrimination in selection of a jury, the Court did not now make unconstitutional that which was never unconstitutional before.

Moreover, the Court's decision in *Batson* was not a clear break with the past. In *Batson,* the Court unequivocally and repeatedly stated that the standards for assessing a *prima facie* case of discrimination of veniremen can be discerned in the Supreme Court's decisions since *Swain. Id.,* at 1721 and 1722. Because the standards for establishing a *prima facie* case of intentional racial discrimination in the selection of veniremen has gradually developed from the time of the decision in *Swain* until the Court's compilation and summary of those standards in *Batson, Batson* was not a clear break with past practices even though *Batson* represents a new conclusion, for the present, of the development of the law since *Swain.* For this reason we find that *Batson* does not fall into the *Johnson* exception to the common law retroactivity rule.

■ Finally, under the principles used to assess the propriety of retroactive application under the selective retroactivity theory, we find no reason not to give retroactive effect to *Batson.* First, the purpose of the new rule in *Batson* is to provide a more effective means of ensuring that members of racial minorities are not excluded from the jury for discriminatory reasons and to ensure to a defendant the right to be tried by his peers, which may include other members of his own race. Because the systematic exclusion of veniremen of a particular race removes from the jury the human experiences common to that racial group, and because a jury applies to its decisional responsibilities its collective human experiences, the decisions reached by a jury from which minority races are excluded may differ from the decision reached by a jury from which no one is excluded by race. Thus the discriminatory racial exclusion of minorities from juries affects the decisional, truth-finding function of juries. Because the rule in *Batson* will assist in ascertaining when racial minorities have been discriminatorily excluded from the jury, and because the

exclusion of minorities from the venire affects the essential, decisional, truth-finding function of the jury, the purpose of the Batson rule weighs in favor of retroactive application. *Solem v. Stumes*, 465 U.S. 638, 104 S.Ct. 1338, 79 L.Ed.2d 579 (1984).

Although we recognize that the purpose of the rule in *Batson* serves not only the truth finding function, but also affects the rights of those who are members of a racial minority to serve as jurors, and impacts on the public's perception of a fair and just administration of justice, these additional purposes of the *Batson* rule do not diminish the impact of the rule on the truth-finding function of the jury. Therefore, we find that the additional purposes to be served by the *Batson* rule do not reduce the weight to be accorded to the purpose of the rule in our assessment of the retroactive application of the rule.

Secondly, because *Batson* does not alter the well-established principle recognized in *Swain*, that the Commonwealth cannot intentionally remove veniremen because of their race, we find that the impact of the prosecution's reliance on *Swain* is minimal. Now, as before, the Commonwealth is required not to discriminate. Although under *Batson* it is easier for a defendant to make a *prima facie* case of discrimination, and therefore the Commonwealth may be called upon to explain its use of peremptory challenges more frequently than in the past, the Commonwealth now, just as under *Swain*, is prohibited from using the peremptory challenges discriminatorily. Therefore, the only thing which existed under *Swain* but which no longer is available to the prosecution is the presumption in any given case that its peremptory challenges were not impermissibly racially motivated. The only impact the prosecution's reliance on Swain could have would be to cause the Commonwealth to have fewer hearings at which it had to explain its use of peremptory challenges. The *Batson* rule would not seriously interfere with the prosecution's reliance on *Swain*, and therefore we find that the Commonwealth's

reliance on *Swain* carries little weight in deciding that *Batson* should not be applied retroactively.

Finally, the Commonwealth has shown no detrimental impact on the administration of justice if *Batson* is given retroactive effect. The Commonwealth has not even suggested that there are numerous cases which are not yet final in which the facts establish a *prima facie* case of discrimination under *Batson* but not under *Swain*. Even if there are numerous such cases, the only additional burden on the administration of justice would be the holding of hearings at which the Commonwealth, if its use of peremptory challenges was proper, should be able quickly to establish the propriety of its conduct by asserting the reason for its use of the peremptory challenges. Thus, we find that the impact on the administration of justice that the retroactive application of *Batson* would have is minimal.

In summary we find that Pennsylvania is not bound to follow the U.S. Supreme Court's decision on retroactivity. Pennsylvania has applied the common law, the modified common law, and the selective approach to determining the retroactivity of new decisions. Under each of these analyses, we find that there is nothing precluding retroactive application of *Batson* on direct appeal from convictions which were not final at the time of *Batson*. Therefore, we hold that *Batson* shall be applied retroactively to cases pending on direct appeal at the time *Batson* was decided where the objection to the Commonwealth's use of peremptory challenges has been properly preserved. Consequently, in this case, we must vacate the judgment of sentence and remand for an evidentiary hearing at which the Commonwealth may present evidence of a neutral explanation for its use of the peremptory challenges. *Batson, Id.,* 106 S.Ct. at 1725. If the trial court concludes that the Commonwealth's use of its peremptory challenges was not discriminatory, then judgment can be reimposed and appellant will have the opportunity to pursue a direct appeal from the judgment. If the trial court concludes that the Common-

wealth's actions were discriminatory, then it can grant appellant a new trial.

Judgment of sentence vacated and case remanded for an evidentiary hearing on appellant's equal protection claim. Jurisdiction is not retained.