534 A.2d 511

**COMMONWEALTH of Pennsylvania**

v.

**R.C. JOHNSON, Jr., Appellant.**

Superior Court of Pennsylvania.

Argued May 7, 1987.

Filed Dec. 8, 1987.

J. Michael Considine, Jr., Devon, for appellant.

Nicholas Casenta, Jr., Assistant District Attorney, West Chester, for Com., appellee.

Before BROSKY, WIEAND and BECK, JJ.

WIEAND, Judge:

R.C. Johnson, Jr. was tried by jury and was found guilty of operating a vehicle while under the influence of alcohol [1] and operating a vehicle with a blood alcohol content in excess of .10%.[2] Post-verdict motions were denied, and Johnson was sentenced to pay a fine of three hundred ($300.00) dollars and the costs of prosecution and to undergo imprisonment for not less than thirty days nor more than twenty-three months. This appeal followed.

On March 30, 1985, at or about 11:55 p.m., Officer John Hackman of the West Whiteland Township Police, observed Johnson's car cross the double yellow line while negotiating a curve on Route 100 in West Goshen Township, Chester County. Hackman followed Johnson's vehicle as it left Route 100 and travelled from West Goshen Township into West Whiteland Township. When it continued to swerve and weave on the roadway, Hackman stopped the vehicle and asked Johnson for his driver's license and registration. Hackman observed that Johnson's speech was slurred, that his eyes were bloodshot, and that he emitted an odor of alcohol. When Johnson was unable to produce his license or registration, Hackman asked him to step out of the vehicle. There, Hackman administered three field sobriety tests—the walk and turn test, the one leg stand test, and the horizontal gaze nystagmus test—all of which Johnson failed. Hackman then arrested Johnson and transported him to the township police station. Hackman thereupon administered two breath tests which resulted in blood alcohol content readings of .13% and .12%.

On appeal, appellant contends that the trial court's instructions regarding the significance of the results of the alcoholic content of his blood were confusing and misled the jury. However, an appellate evaluation of a trial court's charge to the jury must be based on an examination of the charge as a whole in order to determine whether it was fair or prejudicial. *Commonwealth v. Ohle*, 503 Pa. 566, 582,

1. 75 Pa.C.S. § 3731(a)(1).
2. 75 Pa.C.S. § 3731(a)(4).

470 A.2d 61, 70 (1983); *Commonwealth v. Tolassi*, 489 Pa. 41, 57, 413 A.2d 1003, 1010 (1980). Error cannot be predicated on isolated excerpts from a charge, but must be predicated on the charge as a whole. *Commonwealth v. Sweger*, 351 Pa.Super. 188, 194, 505 A.2d 331, 334 (1986); *Commonwealth v. Smith*, 343 Pa.Super. 435, 443, 495 A.2d 543, 547 (1985). Jury instructions will be upheld if they adequately and accurately reflect the law and are sufficient to guide the jury properly in its deliberations. *Commonwealth v. Person*, 345 Pa.Super. 341, 345, 498 A.2d 432, 434 (1985).

The trial court defined the offense of driving while under the influence of alcohol in violation of 75 Pa.C.S. § 3731(a)(1) in the following manner:[3]

Under the Vehicle Code of Pennsylvania, a person is guilty of the crime of operating a motor vehicle while under the influence of alcohol to a degree which renders him incapable of safe driving if you find the following. First of all, the term under the influence of alcohol used in this instruction does not mean that the Commonwealth must prove that the Defendant was drunk or intoxicated. Instead, the meaning of the term includes not only the well-known and easily recognized conditions and degrees of intoxication, but also any abnormal mental or physical condition which results from use of alcohol and tends to deprive the Defendant, Mr. Johnson, of that clearness of intellect and control which he should possess in the absence of such condition, in the absence of the alcohol, provided that the condition renders him incapable of safe driving.

Now, let me give that to you again. The term under the influence of alcohol does not mean that the Commonwealth must prove that the Defendant was drunk or intoxicated. Instead, the meaning of the term includes

---

3. This subsection is as follows:

(a) **Offense defined.**—A person shall not drive, operate or be in actual physical control of the movement of any vehicle while:

(1) under the influence of alcohol to a degree which renders the person incapable of safe driving;

not only the well-known and easily recognized conditions and degrees of intoxication—and again this is where you can apply your own experience and your own common sense to the easily recognized and degrees of intoxication—but also any abnormal mental or physical condition which results from use of alcohol and tends to deprive the Defendant of that clearness of intellect, mind, and control of himself which he would possess in the absence of such condition, provided that the condition renders him incapable of safe driving.

If the evidence convinces you beyond a reasonable doubt that the Defendant was driving a vehicle while under the influence of alcohol and that he was under such influence to a degree which rendered him incapable of safe driving, you should find him guilty. If you do not find the concurrence of all of these factors, you must find him not guilty.

(N.T., 1/22/86, pp. 209–210.) This instruction was a correct statement of the law. See: *Commonwealth v. Griscavage*, 512 Pa. 540, 545, 517 A.2d 1256, 1258 (1986); *Commonwealth v. Horn*, 395 Pa. 585, 590–591, 150 A.2d 872, 875 (1959). Nowhere did the trial court suggest or convey to the jury that a blood alcohol content of .10% or more was sufficient to convict.

The trial court charged the jury as to the offense defined in 75 Pa.C.S. § 3731(a)(4)[4] as follows:

Now, in the alternative, the Commonwealth says that Mr. Johnson is guilty of violating Subsection 4 of the statute which simply says the amount of alcohol by weight in his blood was .10 percent or greater. I don't really think there are any terms that I can define in that for you or that I should have to. It's very simple. If you find from all of the credible testimony that the amount of

---

**4.** This subsection is as follows:

    **(a) Offense defined.**—A person shall not drive, operate or be in actual physical control of the movement of any vehicle while:

    .    .    .    .    .

    (4) the amount of alcohol by weight in the blood of a person is 0.10% or greater.

alcohol registered in Mr. Johnson's breath was .10 percent or greater, then you should find that the Commonwealth has met its burden and you may find the Defendant guilty. On the other hand, if you find that the amount of alcohol is less than .10 percent, then you must find the Defendant not guilty. And, of course, the key, as it is in the first part, is at the time he was driving the vehicle. So, that is what you are looking for.

(N.T. 1/22/86, pp. 210–211.) This, too, was a correct statement of the law. A driver violates this subsection if, at a time when he operates a motor vehicle, the alcoholic content of his blood by weight exceeds 0.10 percent. Nothing further was required for a conviction under this Subsection. See: *Commonwealth v. Mikulan,* 504 Pa. 244, 470 A.2d 1339 (1983); *Commonwealth v. Slingerland,* 358 Pa.Super. 531, 518 A.2d 266 (1986); *Commonwealth v. Speights,* 353 Pa.Super. 258, 509 A.2d 1263 (1986).

At trial, appellant denied that he was under the influence of alcohol when he was arrested and presented expert medical testimony which suggested that at the time of his arrest he was suffering from adult type, onset diabetes. Dr. Philip Kistler, appellant's expert and treating physician, opined that appellant's diabetic condition on the night of his arrest could have accounted for his erratic driving behavior and other symptoms which Officer Hackman observed. Dr. Kistler also testified that acetone, which is found in the blood of diabetics, was probably present in appellant's blood on the night of his arrest and could have affected the amount of measured alcohol in his blood. Appellant's second expert, Stanley J. Broskey, a forensic chemist/toxicologist, testified that acetone could affect the readout on the intoximeter by as much as .02%. However, Officer Hackman testified that the Intoximeter 3000 model, which had been used to test appellant's breath, was equipped to detect acetone in the breath of a diabetic and would register an "interfering substance message" for concentrations of acetone greater than .02%. The readout for each breath test

performed on appellant, he said, did not indicate the presence of acetone.

■ Appellant now contends that the trial court failed to instruct the jury adequately regarding the possible effect of acetone in the blood of an undiagnosed diabetic. This claim is without merit. The trial court expressly instructed the jury to consider the testimony of appellant's experts concerning acetone and its effects on the Intoximeter 3000. The trial court, however, left it to the jury to decide whether there was acetone in the blood of appellant at the time of his arrest, and the effect, if any, which the presence of acetone had on the reading of the Intoximeter 3000.

Appellant also contends that the trial court erred by failing to direct its instructions on reasonable doubt specifically to his defense that the intoximeter results had been influenced by acetone. The trial court did properly instruct the jury that the Commonwealth had the burden of proving each and every element of the offense beyond a reasonable doubt, and appellant did not object to the court's instructions or request additional instructions. Therefore, he has waived this claim and cannot now complain about the absence of a specific instruction by the trial court regarding the Commonwealth's burden of proof with respect to his acetone defense. See: *Commonwealth v. Rounds,* 510 Pa. 524, 527, 510 A.2d 348, 349 (1986); *Commonwealth v. Clair,* 458 Pa. 418, 421–422, 326 A.2d 272, 273–274 (1974); *Commonwealth v. Romanelli,* 336 Pa.Super. 261, 271, 485 A.2d 795, 800 (1984); Pa.R.Crim.P. 1119(b).

In *Swain v. Alabama,* 380 U.S. 202, 203–204, 85 S.Ct. 824, 826, 13 L.Ed.2d 759, 763 (1965), the United States Supreme Court first recognized that a "State's purposeful or deliberate denial to Negroes on account of race of participation as jurors in the administration of justice violates the Equal Protection Clause." In order to prove such a violation, however, the Court required that a defendant prove the establishment of a pattern by which the prosecution, in numerous cases, had peremptorily stricken venire-

men of a particular race. *Id.* at 222–226, 85 S.Ct. at 837–839, 13 L.Ed.2d at 773–776.

In *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), the Supreme Court reaffirmed the principle announced in *Swain* but reexamined the evidentiary burden placed on a defendant who wishes to challenge the government's use of peremptory challenges as racially discriminatory. In *Batson*, the Supreme Court relaxed the evidentiary burden on a defendant by holding that a prima facie case of purposeful discrimination can be established solely by facts pertaining to the defendant's trial. *Id.* at 96–98, 106 S.Ct. at 1722–1724, 90 L.Ed.2d at 87–88.

In *Commonwealth v. McCormick*, 359 Pa.Super. 461, 519 A.2d 442 (1986), a panel of this Court held that *Batson* was to be applied retroactively to cases pending on direct appeal at the time *Batson* was decided. In *Griffith v. Kentucky*, — U.S. —, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987), the United States Supreme Court also addressed the retroactivity of *Batson* and held that its ruling in *Batson* was to be applied, as a matter of federal constitutional law, to all cases, state or federal, which were pending on direct appeal or not yet final.

In the instant case, appellant, who is black, was tried and found guilty on January 22, 1986. No objection was made during the selection of the jury that the Commonwealth was exercising its peremptory challenges in a racially discriminatory manner. Similarly, the issue was not raised in defendant's initial post-verdict motions. While those post-verdict motions were pending, the Supreme Court of the United States, on April 30, 1986, rendered its decision in *Batson*. On May 20, 1986, appellant filed an addendum to his post-verdict motions, in which he claimed for the first time that the Commonwealth had exercised its peremptory challenges in a racially discriminatory manner. The trial court found that appellant's claim had been waived by his failure to object to the Commonwealth's peremptory challenges at the time when the jury was being selected. Appellant now argues that he is entitled to an evidentiary

hearing to explore the possibility that the Commonwealth's peremptory challenges were exercised improperly.

■ Although appellant's case had not become final at the time when *Batson* was decided, appellant's failure to preserve his objection to the manner in which the Commonwealth exercised its peremptory challenges precludes later review.

> The question as to whether we should foreclose an issue because of the absence of a timely objection is not one of retroactivity but rather one of issue preservation. These are two mutually exclusive concepts. The determination of the retroactivity of a principle goes to the question of whether that principle is at issue in the case; i.e., its applicability to the trial in question. *The question of issue preservation assumes the applicability of the principle but precludes consideration of that question because of procedural defects in the raising of the claim.* The failure to interpose an objection is clearly the type of factor which raises a question of issue preservation and it is not one of the concerns relevant in a determination as to the appropriateness of retroactive application.

*Commonwealth v. Hill*, 492 Pa. 100, 105, 422 A.2d 491, 494 (1980) (Opinion in Support of Affirmance) (footnotes omitted) (emphasis added). In short, the failure to raise an issue, objection, or argument in a timely manner during trial forecloses further review of an alleged error in post-trial motions or at the appellate level. See: *Commonwealth v. Horsey*, 481 Pa. 470, 393 A.2d 1 (1978); *Commonwealth v. Pritchitt*, 468 Pa. 10, 359 A.2d 786 (1976); *Commonwealth v. Riley*, 462 Pa. 190, 340 A.2d 427 (1975); *Commonwealth v. Clair, supra.*

■ The Supreme Court's decision in *Batson v. Kentucky, supra,* did not announce a new constitutional right. That right had been established in 1965 by the Supreme Court's decision in *Swain v. Alabama.* The Supreme Court's decision in *Batson* merely relaxed the evidentiary burden on a defendant who claimed that the government's

peremptory challenges had been exercised in a racially discriminatory manner; it did not alter the right which had originally been recognized in *Swain.* Thus, when the jury was selected for appellant's trial, he could have interposed a proper and viable objection to the manner in which the Commonwealth was exercising its peremptory challenges. Because he failed to object, his claim that the exercise of the Commonwealth's peremptory challenges was racially discriminatory has been waived. Such waiver is not obviated by the retroactive application of *Batson.* Cf. *Commonwealth v. McCormick, supra* 359 Pa.Super. at 476, 519 A.2d at 450 (retroactive application of *Batson* limited to cases where the objection to Commonwealth's use of peremptory challenges has been properly preserved).

Judgment of sentence affirmed.