J-E01011-16

2016 PA Super 149

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| SEAN JOSEPH CICCONE | |
| Appellant | No. 3114 EDA 2014 |

Appeal from the PCRA Order Entered October 7, 2014
In the Court of Common Pleas of Bucks County
Criminal Division at No(s): CP-09-CR-0003231-2011

BEFORE:  FORD ELLIOTT, P.J.E., BENDER, P.J.E., BOWES, SHOGAN, LAZARUS, MUNDY, OLSON, OTT, AND STABILE, JJ.

DISSENTING OPINION BY BOWES, J.:                **FILED JULY 12, 2016**

I respectfully disagree with the majority's conclusion that Appellant's sentence is illegal under ***Alleyne v. United States***, 133 S.Ct. 2151 (2013), and cases applying that decision in Pennsylvania.

Police charged Appellant with three counts of possession with intent to deliver ("PWID"), conspiracy to commit PWID, and possession of drug paraphernalia, and Appellant entered a negotiated guilty plea on September 2, 2011.  The facts underlying the plea were as follows.  Police executed a search warrant at Appellant's residence on July 6, 2010.  On the upper floors of the home, police saw a rifle, two shotguns, marijuana, and drug paraphernalia.  In the basement, police found over fifty live marijuana plants weighing approximately thirteen pounds.

Prior to sentencing, the Commonwealth notified Appellant that it would seek a three-year mandatory minimum sentence pursuant to 18 Pa.C.S. § 7508(a)(1)(ii), based on the weight of the marijuana and the number of plants recovered. In accordance with the negotiated plea, on September 9, 2011, Appellant received a three and one-half to five year term of imprisonment,[1] with eligibility for the Risk Recidivism Reduction Incentive program.

While Appellant did not file a direct appeal, he filed a timely *pro se* PCRA. The PCRA court appointed counsel and held three evidentiary hearings. Before the final hearing, counsel filed an amended PCRA petition wherein Appellant averred that his sentence was illegal based on **Alleyne**.[2] The PCRA court denied relief on October 7, 2014, concluding that **Alleyne** could not be retroactively applied in this matter since Appellant's judgment

---

[1] Pursuant to 42 Pa.C.S. § 9756, a defendant's minimum sentence is ordinarily required to be no more than one-half the maximum sentence the court imposed. This precept, however, did not apply where mandatory minimum sentences were at issue. **Commonwealth v. Bell**, 645 A.2d 211 (Pa. 1994); **Commonwealth v. Hockenberry**, 689 A.2d 283, 289 (Pa.Super. 1997).

[2] Although Appellant did waive all but two PCRA claims, which solely involved plea counsel's ineffectiveness, at the final PCRA hearing, his **Alleyne** challenge cannot be considered waived as it relates to the legality of Appellant's sentence. **Commonwealth v. Newman**, 99 A.3d 86, 90 (Pa.Super. 2014) (*en banc*) ("challenge to a sentence premised upon **Alleyne** . . . implicates the legality of the sentence," and such a challenge cannot be waived).

of sentence became final on October 9, 2011, before the **Alleyne** decision was disseminated.

This timely appeal ensued. On appeal, Appellant raises the single contention: "Did the lower court err in denying Appellant's Post-Conviction Relief Act petition, where Appellant challenged the legality of his sentence pursuant to the decision of the United States Supreme Court in **Alleyne v. United States**, 133 S.Ct. 2151 (2013), in a timely filed Post-Conviction Relief Act petition?" Appellant's brief at 4.

Before one can reach a reasoned examination of whether **Alleyne** applies herein, it is necessary to examine the case upon which it is premised, **Apprendi v. New Jersey**, 530 U.S. 466 (2000). **Apprendi** involves the Sixth Amendment right to have an impartial jury determine each element of a crime beyond a reasonable doubt. Apprendi fired bullets into the home of an African-American family who recently moved into an all-white enclave. He pled guilty in connection with that crime and other shootings. When the plea was entered, the prosecutor reserved the right to invoke a New Jersey hate crime statute while Apprendi retained the ability to contest its application. Under that provision, the maximum sentence that Apprendi could receive pursuant to the plea increased if a trial court found, under a preponderance-of-the-evidence standard, that the defendant committed a crime to intimidate an individual or group based upon the victim's race, color, gender, handicap, religion, sexual orientation, or

ethnicity. A hearing was held on the applicability of the hate crime statute to the shooting that involved the African-American family, and the parties presented countervailing evidence regarding Apprendi's motivation for the crime. The trial court concluded that the offense was racially motivated and sentenced the defendant to an enhanced term of imprisonment by applying the hate crime law.

The *Apprendi* Court concluded that Apprendi had a Sixth Amendment right, applicable to New Jersey by virtue of the due process clause of the Fourteenth Amendment, to have a jury determine beyond a reasonable doubt whether the crime was racially motivated. It premised that holding on the fact that the issue of the motivation for his crime increased the maximum sentence that Apprendi faced under the hate crime law. *Apprendi's* specific and oft-repeated holding is, "[A]ny fact (other than prior conviction) that increases the maximum penalty for a crime must be charged in an indictment, submitted to a jury, and proven beyond a reasonable doubt." *Id.* at 476 (quoting *Jones v. United States*, 526 U.S. 227, 243, n. 6 (1999)).

It is of key importance in the present case to note that *Apprendi's* holding was, prior to *Alleyne*, never applicable to a fact that increased a **minimum** sentence, including a fact that triggered a mandatory minimum sentence. The United States Supreme Court's decision in *McMillan v. Pennsylvania*, 477 U.S. 79 (1986), involved Pennsylvania's mandatory

minimum sentencing statute 42 Pa.C.S. § 9712, which required imposition of a mandatory minimum sentence of five years if a defendant committed certain offenses while visibly possessing a firearm. Under § 9712, after a defendant was adjudicated guilty of the underlying offense, the sentencing court would determine by a preponderance of the evidence whether the defendant visibly possessed a firearm. If the defendant did, then the mandatory minimum sentence of five years had to be imposed.

The defendants in **McMillan** maintained that having a sentencing court decide the visible-possession issue offended their Sixth Amendment right to a jury trial. Their position was that "visible possession of a firearm" was actually an element of any of the crimes that invoked § 9712, and thus, had to be submitted to a jury and proven beyond a reasonable doubt. The United States Supreme Court rejected that argument. The **McMillan** Court upheld the constitutionality of § 9712 because it did not increase the statutory maximum penalty for any offense committed, failed to create a separate crime calling for an additional penalty, and was inapplicable until a defendant was convicted of the particular crime for which he was to be sentenced.

**Apprendi** was filed subsequent to **McMillan**. Thereafter, in **Harris v. United States**, 536 U.S. 545 (2002), the nation's High Court re-visited **McMillan** and its viability under **Apprendi**. The statute at issue in **Harris** provided for an increase in the minimum sentence if a sentencing court

determined that the defendant brandished a firearm during the commission of the underlying crime. The **Harris** Court rejected a challenge to the holding of **McMillan** based on the **Apprendi** decision. Under **Harris,** mandatory minimum sentences that were imposed within the maximum ceiling set by a jury verdict did not violate a defendant's Sixth Amendment right to a jury trial.

**Alleyne** applied the holding of **Apprendi** in the mandatory minimum sentencing context. Alleyne and his accomplices committed an armed robbery of a store manager who was driving the business's deposits to a bank, and he was charged with various federal offenses. An applicable federal law provided for an increase in the mandatory minimum sentence by two years if a firearm was brandished during the crime. The jury did not indicate on its verdict slip that the gun in question was visible, but the sentencing court applied the enhanced sentence of two years. Alleyne objected and maintained that raising his mandatory minimum sentence based on the sentencing court's finding that he displayed the firearm violated his Sixth Amendment right to a jury trial. The trial court, applying **Harris**, dismissed Alleyne's complaint. After the federal appeals court affirmed, the United States Supreme Court reversed and overruled **Harris**.

The **Alleyne** Court observed that **Harris** distinguished between facts that increased a statutory maximum and those that increased a mandatory minimum sentence. It concluded that this differentiation was incompatible

with the rationale of **Apprendi** since mandatory minimum sentences pertain to the permissible ranges of penalties that can be imposed upon a conviction for a crime. The United States Supreme Court reasoned that since "[m]andatory minimum sentences increase the penalty for a crime," it "follows, then, that any fact that increases the mandatory minimum is an 'element' that must be submitted to the jury." **Alleyne**, **supra** at 2155. The Court continued that

> **Apprendi's** definition of 'elements' necessarily includes not only facts that increase the ceiling, but also those that increase the floor. Both kinds of facts alter the prescribed range of sentences to which a defendant is exposed and do so in a manner that aggravates the punishment. . . . Facts that increase the mandatory minimum sentence are therefore elements and must be submitted to the jury and found beyond a reasonable doubt.

**Id**. at 2158. Thus, **Alleyne**, as did **Apprendi**, reallocated from the sentencing court to the jury the task of determining the existence of any fact that triggers application of a mandatory minimum sentence, and both cases altered the burden of proof to the beyond-a-reasonable-doubt standard.

Pursuant to **Alleyne**, a host of Pennsylvania mandatory minimum statutes, including the one applied herein, have been ruled unconstitutional in their entirety if the statute in question assigned the task of determining application of the mandatory minimum to a sentencing court under a preponderance-of-the-evidence rubric. **Commonwealth v. Hopkins**, 117 A.3d 247 (Pa. 2015); **Commonwealth v. Vargas**, 108 A.3d 858 (Pa.Super. 2014) (*en banc*); **Commonwealth v. Newman**, 99 A.3d 86 (Pa.Super.

2014) (*en banc*); **Commonwealth v. Cardwell**, 105 A.3d 748 (Pa.Super. 2014); **Commonwealth v. Fennell**, 105 A.3d 13 (Pa.Super. 2014); **Commonwealth v. Thompson**, 93 A.3d 478 (Pa.Super. 2014). All of these cases striking imposition of a mandatory minimum sentence under a statute rendered infirm by **Alleyne** were pending on direct appeal when **Alleyne** was disseminated. **See Schriro v. Summerlin**, 542 U.S. 348, 351 (2004) ("When a decision of this Court results in a 'new rule,' that rule applies to all criminal cases still pending on direct review.").

This Court is tasked with deciding whether **Alleyne**, and, concomitantly, the cases issued pursuant to that decision, should be applied retroactively in the post-conviction setting to a sentence that was legally final before **Alleyne** was decided. In my view, the retroactivity test that is applied by the United States Supreme Court and our Supreme Court compels a negative answer to that inquiry.

I begin with the applicable federal standard. "The normal framework for determining whether a new rule applies to cases on collateral review stems from the plurality opinion in **Teague v. Lane**, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989)." **Welch v. United States**, 136 S. Ct. 1257, 1264 (2016).[3] Pursuant to **Teague**, the general rule is that "new

---

[3] **Welch** examined the retroactivity of the holding of **Johnson v. United States**, 135 S.Ct. 2551 (2015), wherein the United States Supreme Court
*(Footnote Continued Next Page)*

constitutional rules of criminal procedure will **not** be applicable to those cases which have become final before the new rules are announced." **Id**. (emphasis added) (quoting **Teague**, **supra** at 310). There are "two categories of decisions that fall outside this general bar[.]" **Welch**, **supra** at 1264. First, "new **substantive** rules generally apply retroactively." **Id**. (emphasis in original) (quoting **Schriro**, **supra** at 351). "Second, new watershed rules of criminal procedure, which are procedural rules implicating the fundamental fairness and accuracy of the criminal proceeding, will also have retroactive effect." **Welch**, **supra** at 1264 (citation and quotation marks omitted).

> "A rule is substantive rather than procedural if it alters the range of conduct or the class of persons that the law punishes." **Schriro**, 542 U.S., at 353, 124 S.Ct. 2519. "This includes decisions that narrow the scope of a criminal statute by interpreting its terms, as well as constitutional determinations

*(Footnote Continued)* ————————————

struck down a portion of a federal law as unconstitutionally void for vagueness. Due to **Johnson**, the substantive reach of the federal act was changed, and **Johnson** altered a range of conduct or class of persons that the statute punished. In **Welch**, **Johnson** was characterized as a substantive rule. Similarly, in **Montgomery v. Louisiana**, 136 S.Ct. 718 (2016), the Supreme Court examined whether **Miller v. Alabama**, 132 S. Ct. 2455 (2012), was retroactive. **Miller** ruled that juvenile homicide offenders cannot be given a mandatory term of life imprisonment without the possibility of parole. Since **Miller** prohibited a category of punishment, mandatory life without parole, for a class of people, juvenile homicide offenders, it likewise was considered a substantive rule. As noted by the majority, our Supreme Court's application of the federal retroactivity analysis with respect to **Miller** was incorrect. **See Commonwealth v. Cunningham**, 81 A.3d 1 (Pa. 2013).

that place particular conduct or persons covered by the statute beyond the State's power to punish." *Id.,* at 351–352, 124 S.Ct. 2519 (citation omitted) . . . . Procedural rules, by contrast, "regulate only the **manner of determining** the defendant's culpability." *Schriro,* 542 U.S., at 353, 124 S.Ct. 2519. Such rules alter "the range of permissible methods for determining whether a defendant's conduct is punishable." *Ibid*. "They do not produce a class of persons convicted of conduct the law does not make criminal, but merely raise the possibility that someone convicted with use of the invalidated procedure might have been acquitted otherwise." *Id.,* at 352, 124 S.Ct. 2519.

*Welch*, *supra* at 1264-65 (emphasis in original). In ***Montgomery v. Louisiana***, 136 S.Ct. 718 (2016), which is examined in footnote three, *supra*, the United States Supreme Court held that the analysis employed in ***Teague*** must to be used by the state courts when the new rule is substantive.

This test first requires an analysis of whether a decision is a new rule of constitutional law. It is beyond cavil that ***Alleyne*** is a new rule of constitutional law. Prior to ***Alleyne***, the defendant did not have a Sixth Amendment right to have an impartial jury decide the existence, beyond a reasonable doubt, of any fact that triggered application of mandatory minimum sentence. ***Harris***, ***supra***; ***McMillan***, ***supra***. The next inquiry is whether ***Alleyne*** announced a substantive rule or a watershed procedural rule. If ***Alleyne*** announced neither a substantive rule nor a watershed procedural rule, then the general rule applies, and ***Alleyne*** is not retroactive to cases where a defendant's sentence was final prior to ***Alleyne's*** issuance.

As the Court in **Montgomery** observed, "Substantive rules . . . set forth categorical constitutional guarantees that place certain criminal laws and punishments altogether beyond the State's power to impose." **Montgomery**, **supra** at 729. Whereas, procedural rules change the allowable method for determining whether a defendant's conduct can be punished. Procedural rules simply raise the possibility that someone convicted with use of the invalid procedure otherwise might have been acquitted.

Pursuant to the **Teague** framework, **Alleyne** is a procedural rather than substantive rule, which the majority appears to concede. Majority opinion at 15. **Alleyne** regulates the manner of determining the level of a defendant's punishment--the permissible method for determining the amount of punishment that a defendant is to receive for his conduct. The **Alleyne** ruling does not prohibit the mandatory minimum punishments for a class of offenders nor does it decriminalize conduct. The range of a sentence remains the same. **Alleyne** procedurally mandates that a jury determine facts triggering a minimum sentence beyond a reasonable doubt. It raises the possibility that a person sentenced to a minimum by the sentencing court may have been found not subject to the enhanced sentence by a jury.

As every federal circuit court has concluded, I believe that **Alleyne** is not entitled to retroactive effect under **Teague**. **Butterworth v. United**

*States*, 775 F.3d 459 (1st Cir. 2015), *certiorari denied*, 135 S.Ct. 1517 (2015); *United States v. Redd*, 735 F.3d 88 (2nd Cir. 2013); *United States v. Reyes*, 755 F.3d 210 (3rd Cir. 2014), *certiorari denied*, 135 S.Ct. 695 (2014) ; *United States v. Stewart*, 540 F. App'x 171, 172 n.1 (4th Cir. 2013); *United States v. Olvera*, 775 F.3d 726 (5th Cir. 2015); *In re Mazzio*, 756 F.3d 487 (6th Cir. 2014); *Crayton v. United States*, 799 F.3d 623 (7th Cir. 2015), *certiorari denied*, 136 S.Ct. 424 (2015); *Walker v. United States*, 810 F.3d 568 (8th Cir. 2016), *certiorari denied*, 2016 WL 1545540 (May 16, 2016); *Hughes v. United States*, 770 F.3d 814 (9th Cir. 2014); *In re Payne*, 733 F.3d 1027 (10th Cir. 2013); *Jeanty v. Warden, FCI-Miami*, 757 F.3d 1283 (11th Cir. 2014).

In my view, *Alleyne* also does not involve a watershed procedural rule. The most recent decision addressing *Alleyne's* retroactivity was issued by the Eighth Circuit Court of Appeals, which provides this insightful analysis as to why *Alleyne* does not fall within the parameters of a watershed procedural rule:

> The Supreme Court "gives retroactive effect to only a small set of 'watershed rules of criminal procedure implicating the fundamental fairness and accuracy of the criminal proceeding.'" *Schriro v. Summerlin,* 542 U.S. 348, 352, 124 S.Ct. 2519, 159 L.Ed.2d 442 (2004) (quoting *Saffle v. Parks*, 494 U.S. 484, 495, 110 S.Ct. 1257, 108 L.Ed.2d 415 (1990)). "To qualify as watershed, a rule must be necessary to prevent 'an impermissibly large risk' of an inaccurate" outcome and "must 'alter our understanding of the bedrock procedural elements essential to the fairness of a proceeding.'" [*Whorton v. Bockting*, 549 U.S. 406, 418 (2007)] (quoting *Schriro,* 542

U.S. at 352, 124 S.Ct. 2519). Explaining the exception is "extremely narrow" and observing "it is unlikely that any such rules have yet to emerge," the Supreme Court has, "in the years since *Teague*, rejected every claim that a new rule satisfied the requirements for watershed status." *Id.* at 417–18, 127 S.Ct. 1173 (quoting *Schriro*, 542 U.S. at 352, 124 S.Ct. 2519) (internal marks omitted).

. . . .

Although the circumstances and analysis have varied, the circuit courts have agreed that even if *Alleyne* announced a new rule, the decision is not the rare exception that announced a watershed rule of criminal procedure that "'altered our understanding of the bedrock procedural elements' of the adjudicatory process." *United States v. Winkelman*, 746 F.3d 134, 136 (3rd Cir. 2014) (quoting *Teague*, 489 U.S. at 311, 109 S.Ct. 1060); *accord Hughes v. United States*, 770 F.3d 814, 818–19 (9th Cir. 2014).

*Walker v. United States*, *supra* at 574 (footnote omitted).

The fact that a jurist rather than a jury renders a decision does not pertain to the fundamental fairness of a proceeding. Jury proceedings and trial judge proceedings both carry factors rendering them more or less accurate. A hearing before a trial judge rather than a jury contains no increased potential for unfairness.

Herein, it is vastly significant that *Apprendi*, of which *Alleyne* is merely an extension, has **never** been held to apply retroactively. *E.g. United States v. Swinton*, 333 F.3d 481 (3rd Cir. 2003), *certiorari denied*, 540 U.S. 977 (2003). That fact has informed the decisions of the circuit courts that *Alleyne* likewise is not retroactive. Simply put: "If *Apprendi* does not apply retroactively, then a case extending *Apprendi* should not

apply retroactively." **Walker**, **supra** at 575 (quoting **Hughes**, **supra** at 818).

The United States Supreme Court decision in **Schriro, supra,** and its discussion of **Ring v. Arizona**, 536 U.S. 584 (2002), is highly instructive. **Ring** involved a successful **Apprendi** challenge to a death penalty statute, just as **Alleyne** was a fruitful **Apprendi** claim. In **Schriro**, the United States Supreme Court analyzed whether **Ring** applied retroactively and concluded that **Ring** did not involve a watershed procedural rule. It found that judicial fact-finding, as opposed to that of a jury, did not so seriously diminish accuracy as to present a large risk of punishing conduct more severely. The **Schriro** Court observed that "for every argument why juries are more accurate factfinders, there is another why they are less accurate." **Schriro**, **supra** at 356. The High Court ruled that it was "implausible that judicial factfinding so '**seriously** diminishes' accuracy as to produce an 'impermissibly large risk' of injustice." **Id**. (emphasis in original). Indeed, in **DeStefano v. Woods**, 392 U.S. 631 (1968) (*per curiam*), the United States Supreme Court actually refused to accord retroactivity to **Duncan v. Louisiana**, 391 U.S. 145 (1968). **Duncan** applied the Sixth Amendment's right to a jury trial for serious offenses during the **guilt-phase adjudicatory process** to the states under the Fourteenth Amendment.

Hence, whether a judge or jury determines the facts essential to an increased punishment is not material to the fundamental fairness or

accuracy of application of a mandatory minimum sentence. The distinction between whether a judge or jury determines the facts triggering a mandatory minimum does not result in the procedure announced in *Alleyne* becoming a watershed rule.

In my view, contrary to the majority's analysis, mandatory minimum sentences do not enjoy a type of unique status in Pennsylvania's sentencing scheme so as to elevate *Alleyne* to a watershed procedural rule. The majority maintains that *Alleyne* is a watershed procedural rule because it has been "cataclysmic to" Pennsylvania's sentencing scheme, has "wreaked havoc on mandatory minimum sentencing to Pennsylvania," and has a "unique and profound impact" in this Commonwealth. Majority opinion at 6, 13, 15. A mandatory minimum sentence sets the least amount of time that a defendant will spend in jail. Mandatory minimums are no more inimitable in Pennsylvania than in any other state; they have the same effect everywhere. *Alleyne* impacts mandatory minimum sentencing statutes no differently here than in any other jurisdiction.

If the majority is suggesting that Pennsylvania previously employed more mandatory minimum sentencing provisions than other states, this position is unsupported by citation. The number of statutes that a new procedural rule affects is **irrelevant** to the determination of whether the rule is watershed. It is categorically not part of the analysis of whether a procedural rule is watershed. Indeed, the Eighth Circuit expressly rejected

- 15 -

the position that **Alleyne** becomes watershed merely due to the "frequency with which such minimums might apply[.]" **Walker**, **supra** at 575.

The majority emphasizes that we are free to find, under state law, that a new constitutional rule of law is retroactive, even when the federal constitution does not require it to be so. Significantly, however, the majority neither sets forth the applicable precedent nor applies it. As we observed in **Commonwealth v. McCormick**, 519 A.2d 442 (Pa.Super. 1986), Pennsylvania courts have utilized differing methods of deciding whether a new rule should apply retroactively. In **McCormick**, a direct appeal case, this Court recognized that Pennsylvania courts have applied common law, modified common law, and selective retroactivity approaches. "The common law approach set forth in **U.S. v. Schooner Peggy**, 5 U.S. (1 Cranch) 103, 2 L.Ed. 49 (1801) is that an appellate court must apply the law as it exists at the time of its decision." **Id**. at 447. In this situation, constitutional rules always are applied retroactively whether on direct or collateral review. This method was premised on the natural rights view underlying the foundation of early American constitutional thought that the source of a new rule is the Constitution itself, not any judicial power to create new rules of law. Accordingly, "the underlying right necessarily pre-exists . . . articulation of the new rule." **Danforth v. Minnesota**, 552 U.S. 264, 272 (2008). This approach is no longer utilized by either the United States Supreme Court or the Pennsylvania Supreme Court in deciding collateral review cases.

The modified common law retroactivity test applied a new ruling to cases pending on direct appeal, *see United States v. Johnson*, 457 U.S. 537 (1982), which, as observed, is the law in Pennsylvania, so long as the issue is preserved or is a claim that cannot be waived.

The selective retroactivity approach examines "1) the purpose to be served by the new standard; 2) the extent of reliance by law enforcement authorities on the old standard; and 3) the effect on the administration of justice." *McCormick*, *supra* at 447 (citing *Stovall v. Denno*, 388 U.S. 293 (1967)). This latter test encompassed cases on collateral review. *See Johnson v. New Jersey*, 384 U.S. 719 (1966). In *McCormick*, we described this construct as whether "the purpose of the new standard affects the truth finding function, thereby raising serious questions about the accuracy of prior guilty verdicts[.]" *McCormick*, *supra* at 447. Thus, it is indistinguishable from the watershed-procedural-rule analysis employed by the federal courts.

The *McCormick* Court pointed out that each of these approaches has been used to varying degrees in Pennsylvania. It further noted that the Pennsylvania Supreme Court in *Commonwealth v. Cabeza*, 469 A.2d 146 (Pa. 1983), a direct appeal case, held:

> where an appellate decision overrules prior law and announces a new principle, unless the decision specifically declares the ruling to be prospective only, the new rule is to be applied retroactively to cases where the issue in question is properly preserved at all stages of adjudication up to and including any direct appeal.

*McCormick*, *supra* at 447-448 (quoting *Cabeza*, *supra* at 148).

*McCormick* was decided prior to *Teague*, which attempted to synthesize the United States Supreme Court's various retroactivity approaches. Before the *Teague* decision, Pennsylvania courts also discussed retroactivity in *Commonwealth v. Gillespie*, 516 A.2d 1180, 1183 (Pa. 1986) (OAJC). In *Gillespie*, the Pennsylvania High Court was faced with determining whether its prior ruling in *Commonwealth v. Tarver*, 426 A.2d 569 (Pa. 1981), itself a collateral review case was retroactive. The *Tarver* Court had ruled that a sentence for both felony murder and robbery illegally violated double jeopardy where the underlying felony was the robbery.

Despite the fact that *Tarver* involved a collateral review matter, the *Gillespie* Court concluded that a new constitutional rule does not apply retroactively "to any case on collateral review unless that decision was handed down during the pendency of appellant's direct appeal and it was properly preserved there, or . . . was nonwaivable." *Gillespie*, *supra* at 1183. The Court added that, although the legality of sentence issue in *Gillespie* was non-waivable, it would **not** be retroactively applied because the *Tarver* decision occurred after the finality of Gillespie's judgment of sentence. It is evident that under any of the retroactivity tests used in Pennsylvania, aside from the no longer applicable common law approach,

*see Lemon v. Kurtzman*, 411 U.S. 192 (1973); *Commonwealth v. Geschwendt*, 454 A.2d 991, 999 (Pa. 1982), Appellant's *Alleyne* challenge does not apply retroactively during PCRA review under state law.

At its essence, the majority's approach rests largely upon tautology. Since the statute is unconstitutional, it was void when passed, rendering Appellant's sentence illegal. The majority overlooks the singularly critical fact that, when that statute was enacted as well as when Appellant was sentenced, the statute in question was, in fact, constitutional. *McMillan*; *supra*; *Harris*, *supra*. Hence, the statute was neither void when passed nor void from its inception.

*Alleyne* overruled *Harris* and *McMillan* and rendered a constitutional statute unconstitutional as of the date that *Alleyne* was disseminated. It is entitled to effect only to cases pending on direct review when it was issued. Pennsylvania's mandatory minimum statutes cannot be considered unconstitutionally void *ab initio* as the United States Supreme Court initially upheld the identical sentencing paradigm in passing on the constitutionality of 42 Pa.C.S. § 9712. *McMillan*, *supra*; *see also Commonwealth v. Stokes*, 38 A.3d 846 (Pa.Super. 2011) (upholding 42 Pa.C.S. § 9712, but opining that the statute would fail if *Harris* and *McMillan* were overturned).

In *Commonwealth v. Derhammer*, 2016 Pa Super 34 n. 10, ___ A.3d ___ , ___ n.10 (Pa.Super. 2016) (emphasis added), we set forth:

There are exceptions to the [**Ex parte**] **Siebold**, [100 U.S. 371 (1879)] pronouncement that an unconstitutional law is void from the outset. **That is, where there are actions taken in justifiable reliance upon a judicial ruling that the statute was constitutional at one point in time, the statute is not always considered a nullity and as if it never existed**. **See** 46 Am.Jur. 2d Constitutional Law § 196; **Heilig Estate**, 13 Pa. D. & C.3d 1, *8; **see also Lemon v. Kurtzman**, 411 U.S. 192, 199 (1973) (limiting its decision in **Norton v. Shelby County**, 118 U.S. 425, 442 (1886), which reiterated the constitutionally void *ab initio* doctrine espoused in **Siebold** by stating, "However appealing the logic of **Norton** may have been in the abstract, its abandonment reflected our recognition that statutory or even judge-made rules of law are hard facts on which people must rely in making decisions and in shaping their conduct."); **see also** Thomas Raeburn White, Commentaries on the Constitution of Pennsylvania, 27-28 (1907) (discussing exceptions to unconstitutionally void *ab initio* doctrine).

Appellant's sentence was not illegal when imposed, he was sentenced under the statute in justifiable reliance upon United States Supreme Court precedent that it was constitutional, and the statute is not a nullity. Appellant's sentence can be considered illegal now only if **Alleyne** is held to apply retroactively. As my above analysis demonstrates, **Alleyne** is not retroactive under either the federal retroactivity test or the state one. Hence, this dissent.

Judge Olson and Judge Stabile Join this Dissenting Opinion.