600 A.2d 577

**COMMONWEALTH of Pennsylvania**

v.

**Michale J. ANDERSON, Appellant. (Two Cases)**

Superior Court of Pennsylvania.

Submitted Sept. 3, 1991.

Filed Dec. 11, 1991.

Shelly Stark, Chief, Appellate Division, Asst. Public Defender, Pittsburgh, for appellant.

Edward M. Clark, Asst. Dist. Atty., Pittsburgh, for Com., appellee.

Before WIEAND, KELLY and POPOVICH, JJ.

WIEAND, Judge:

Michale J. Anderson was tried by jury and was found guilty of first degree murder and theft in connection with the strangulation and stabbing death of seventeen year old Karen Hurwitz and the taking of an automobile belonging to her father. Post-trial motions were denied, and Anderson was sentenced to serve a mandatory sentence of life imprisonment for first degree murder, as well as a consecutive term of imprisonment for not less than three and one-half (3½) years nor more than seven (7) years for theft. On direct appeal from the judgment of sentence, Anderson argues that the trial court improperly charged the jury that the first two elements of first degree murder had been established beyond a reasonable doubt, thereby

directing a verdict as to those elements. He additionally contends that his trial counsel was constitutionally ineffective for failing to present the testimony of a psychiatric expert in support of the diminished capacity defense which he utilized at trial.

"In reviewing jury instructions to determine whether reversible error has been committed by a trial court, we consider the charge as a whole. Error will not be predicated on isolated excerpts. Rather, it is the general effect of the charge that controls." *Commonwealth v. Myers,* 376 Pa.Super. 41, 50, 545 A.2d 309, 314 (1988). See also: *Commonwealth v. Ohle,* 503 Pa. 566, 582, 470 A.2d 61, 70 (1983), *cert. denied,* 474 U.S. 1083, 106 S.Ct. 854, 88 L.Ed.2d 894 (1986); *Commonwealth v. Bowers,* 400 Pa.Super. 377, 392, 583 A.2d 1165, 1172 (1990). "Jury instructions will be upheld if they adequately and accurately reflect the law and are sufficient to guide the jury properly in its deliberations." *Commonwealth v. Johnson,* 368 Pa.Super. 427, 430, 534 A.2d 511, 512 (1987). See also: *Commonwealth v. Person,* 345 Pa.Super. 341, 345, 498 A.2d 432, 434 (1985); *Commonwealth v. Cimorose,* 330 Pa.Super. 1, 10, 478 A.2d 1318, 1323 (1984).

The portion of the jury charge at issue in the instant case is as follows:

First degree murder is a murder in which the killer has the specific intent to kill.

You may find a defendant guilty of first degree murder if you are satisfied that the following three elements have been proven beyond a reasonable doubt by the Commonwealth. First, that the victim Karen Hurwitz is dead. Secondly, that the defendant killed her. And thirdly, that the defendant did so with the specific intent to kill with malice.

Obviously, ladies and gentlemen, the first two have been proven beyond a reasonable doubt, I'm sure. There's no question about those. The one that you really have to consider here is the third element, that the

defendant did so, did this killing, with the specific intent to kill and with malice.

Appellant argues that, by instructing the jury that the first two elements of first degree murder had been established beyond a reasonable doubt, the trial court usurped the jury's fact finding role and, in effect, directed a verdict with respect to those elements. We disagree.

At trial, it was conceded by the defense that appellant had killed the victim. In both his opening and closing statements, defense counsel told the jury that it was undisputed that appellant had killed the victim. Counsel argued, however, that appellant had lacked the specific intent to kill which was necessary for a finding of first degree murder. Such a diminished capacity defense concedes general criminal liability, but argues that the defendant was incapable of forming the specific intent to kill. *Commonwealth v. Faulkner*, 528 Pa. 57, 70 n. 4, 595 A.2d 28, 35 n. 4 (1991); *Commonwealth v. Walzack*, 468 Pa. 210, 221, 360 A.2d 914, 919–920 (1976).

Because appellant admitted the killing and contested only the degree of guilt, the trial court did not err when it told the jury that the victim was dead and that appellant had killed her. See: *Commonwealth v. Schultz*, 170 Pa.Super. 504, 511–512, 87 A.2d 69, 72 (1952), *cert. denied*, 344 U.S. 868, 73 S.Ct. 111, 97 L.Ed. 673 (1952) (in prosecution for burglary, larceny and receiving stolen goods, where fact that crime occurred was undisputed and only issue being contested was defendant's connection with crime, trial court did not err by charging jury that identity of property, its location and fact it was stolen were fairly well proven). Moreover, by instructing the jury that it should focus on whether appellant had acted with malice and with the specific intent to kill, the court fulfilled its principal duty of "clarify[ing] the issues so that the jury [might] understand the questions to be resolved." *Commonwealth v. Newman*, 323 Pa.Super. 394, 402, 470 A.2d 976, 980 (1984). See also: *Commonwealth v. Beach*, 438 Pa. 37, 40, 264 A.2d

712, 714 (1970); *Commonwealth v. Mayfield,* 401 Pa.Super. 560, 573, 585 A.2d 1069, 1075 (1991) (en banc).

In *Commonwealth v. Walker,* 459 Pa. 12, 326 A.2d 311 (1974), the defendant was charged with murder in connection with the shooting of a man inside a Philadelphia bar. The owner of the bar, who knew the defendant well, identified him as the perpetrator. The defendant, however, claimed to have been at home, asleep, at the time of the shooting. In its charge to the jury, the trial court stated that there was no question about identification. On appeal, the defendant asserted that the court had usurped the jury's fact finding function by removing from its consideration the issue of identification. The Supreme Court rejected this argument, reasoning as follows:

> The challenged statement was merely an attempt to narrow the issues for the jury's consideration. In view of the length of time that appellant was alleged to have been in the bar and subject to observation by Mr. Jones, who by virtue of their prior relationship would have no difficulty in recognizing the appellant, the question of mistaken identity was clearly not in the case. As the trial judge properly pointed out, the case essentially turned upon the credibility of irreconcilably conflicting testimony. In such a situation, it was clearly proper for the trial judge to exercise his right to clarify the issues for jury.

*Commonwealth v. Walker, supra,* 459 Pa. at 16, 326 A.2d at 313 (citations omitted). So too in the instant case, the trial court will not be faulted for identifying for the jury the central issue to be decided.

 Moreover and in any event, a review of the trial court's jury instructions in their entirety is persuasive that no part of the jury's function was usurped by the court, which left it to the jury to determine whether all elements of the crime of murder had been established beyond a reasonable doubt. The court told the jury that appellant was presumed to be innocent, that the Commonwealth had the burden of proving each and every element of the offense charged beyond a reasonable doubt, and that it was

solely the jury's function to decide all issues of fact. Finally, the court told the jury that it could find the defendant not guilty or guilty of the several degrees of homicide. We conclude, therefore, that there is nothing in the court's jury instructions that would entitle appellant to a new trial.

In evaluating claims of ineffective assistance of counsel, we employ an analysis as set forth by the Supreme Court in *Commonwealth v. Durst*, 522 Pa. 2, 559 A.2d 504 (1989) as follows:

> The threshold inquiry in such claims is whether the issue/argument/tactic which counsel has foregone and which forms the basis for the assertion of ineffectiveness is of arguable merit; for counsel cannot be considered ineffective for failing to assert a meritless claim. *Commonwealth v. Pursell*, 508 Pa. 212, 495 A.2d 183 (1985). If this threshold is met, it must next be established that the particular course chosen by counsel had no reasonable basis designed to effectuate his client's interests. *Commonwealth ex rel. Washington v. Maroney*, 427 Pa. 599, 235 A.2d 349 (1967). Finally, we require that the defendant establish how counsel's commission or omission prejudiced him. *Commonwealth v. Pierce*, 515 Pa. 153, 527 A.2d 973 (1987).

*Id.*, 522 Pa. at 4–5, 559 A.2d at 505. See also: *Commonwealth v. Rollins*, 525 Pa. 335, 344, 580 A.2d 744, 748 (1990); *Commonwealth v. Davis*, 518 Pa. 77, 83, 541 A.2d 315, 318 (1988). Additionally, "[b]ecause the law presumes that counsel is effective, the burden of establishing ineffectiveness rests with appellant." *Commonwealth v. House*, 371 Pa.Super. 23, 28, 537 A.2d 361, 363 (1988). See also: *Commonwealth v. Floyd*, 506 Pa. 85, 90, 484 A.2d 365, 367 (1984); *Commonwealth v. McKendrick*, 356 Pa.Super. 64, 71, 514 A.2d 144, 148 (1986).

In the instant case, appellant's only defense at trial was that, because of mental illness, he had been acting under a diminished capacity which prevented him from forming a specific intent to kill. However, trial counsel presented no expert testimony in support of this defense.

Appellant contends that this failure rendered counsel ineffective.

The law is clear that counsel's failure "to interview witnesses whose testimony could prove beneficial and exculpatory to the defendant's case can constitute ineffective assistance of counsel if no reasonable basis otherwise exists for counsel's failure." *Commonwealth v. Anderson*, 501 Pa. 275, 287, 461 A.2d 208, 214 (1983). See also: *Commonwealth v. Mabie*, 467 Pa. 464, 359 A.2d 369 (1976); *Commonwealth v. Twiggs*, 460 Pa. 105, 331 A.2d 440 (1975). Moreover, "[w]hen the only issue is appellant's state of mind, trial counsel's decision not to present relevant psychiatric and psychological testimony which may be determinative of the issue can be as damaging to the truthfinding process as the failure in other contexts to present the testimony of an available eyewitness, alibi witness, or other key witness." *Commonwealth v. Potts*, 486 Pa. 509, 513, 406 A.2d 1007, 1009 (1979) (plurality opinion). See also: *Commonwealth v. Stewart*, 304 Pa.Super. 382, 388–389, 450 A.2d 732, 735 (1982); *Commonwealth v. Sirianni*, 286 Pa.Super. 176, 185–186, 428 A.2d 629, 634 (1981).

The Pennsylvania Supreme Court has consistently held that expert psychiatric testimony is admissible to negate the specific intent to kill which is essential to first degree murder. See: *Commonwealth v. Terry*, 513 Pa. 381, 521 A.2d 398 (1987), *cert. denied*, 482 U.S. 920, 107 S.Ct. 3198, 96 L.Ed.2d 685 (1987); *Commonwealth v. Garcia*, 505 Pa. 304, 479 A.2d 473 (1984); *Commonwealth v. Walzack*, *supra*. In this regard, the Supreme Court has said:

> [P]sychiatric testimony relevant to the cognitive functions of deliberation and premeditation is competent on the issue of specific intent to kill. Thus psychiatric testimony is competent in Pennsylvania on the issue of specific intent to kill if it speaks to mental disorders affecting the cognitive functions necessary to formulate a specific intent.

*Commonwealth v. Weinstein,* 499 Pa. 106, 114, 451 A.2d 1344, 1347 (1982). See also: *Commonwealth v. Terry, supra,* 513 Pa. at 394, 521 A.2d at 404.

In support of his claim of ineffectiveness, appellant has affixed to his brief affidavits from two psychiatrists. The affidavit of Dr. Robert Wettstein states, inter alia, that:

6. I would have been available and willing to examine Michael J. Anderson and to testify as an expert at his trial if requested.

7. Based upon my recent examination of Michael J. Anderson, I conclude with a reasonable degree of medical certainty that he suffers from manic depressive illness which can affect cognitive functioning as well as his ability to premeditate and deliberate the offense in question.

. . . .

I have diagnosed Michael J. Anderson as suffering from a bipolar disorder with episodes of mania and depression.... His past episodes of mania were characterized by euphoria, excessive activity, lack of sleep, inappropriate spending, increased sexual activity, increased grandiosity, perceptual distortions such as hallucinations (auditory, visual, and tactile), racing thoughts, impaired attention and concentration, increased speech, reduced appetite, chaotic lifestyle, and inability to function at school. His depressed episodes were characterized by periods of predominantly and persistently depressed mood, feelings of worthlessness, and suicide ideation with a previous suicide attempt with a handgun in 1988. According to the history provided, there is also evidence that at the time of the alleged offense, the defendant was experiencing cognitive impairment consisting of impaired concentration and thinking, perceptual disturbances (tactile, visual, and auditory), hyperalertness, and irrational and disorganized behavior. Earlier in the day there was evidence of a manic episode with symptoms noted above.

The affidavit of Dr. Gary Vallano in pertinent part is as follows:

5. During my assessment of Michael Anderson, I diagnosed him as suffering from bipolar disorder and the symptoms reflecting this illness are filed in the Health Services Progress Notes at Shuman Center. I based this diagnosis on the history presented to me b[y] Michael Anderson and his mother. This history includes a report by Michael of depressive symptoms including sleep difficulties, suicide ideation, decreased energy, depressed mood, and a suicide attempt. During at least one of these episodes Michael experienced psychotic symptoms including derealization, depersonalization, and visual and auditory hallucinations. These resulted in a suicide attempt and hospitalization at St. Francis Hospital according to Michael. Additionally, Michael reports episodes of decreased need for sleep, grandiosity, irritability, mood lability, increased speed of thoughts, and feelings that things are not real.

6. His mother reported a similar history of mood lability and fluctuations in Michael. She also reports a strong family history of bipolar disorder in Michael's twin sister, his maternal grandfather, and at the time of the discussion with her she was being assessed for similar difficulties in mood fluctuation. This information and my observations of Michael Anderson at Shuman Center provide the basis for my diagnosis.

7. Had I been subpoenaed to Michael Anderson's trial, I would have honored the subpoena and would have testified if requested to do so that he suffered from bipolar disorder with psychotic features. This disorder could [a]ffect his cognitive functioning during acute episodes.

The psychiatric evidence appearing in the affidavits of Dr. Wettstein and Dr. Vallano would have been relevant if offered at appellant's trial. It was of a nature which, if believed, would have tended to reduce the degree of appellant's crime. Therefore, we are constrained to conclude that there is arguable merit in appellant's contention that

trial counsel was ineffective for failing to present psychiatric testimony in support of a diminished capacity defense. However, because there has not yet been an evidentiary hearing to determine whether trial counsel had a reasonable basis for failing to present psychiatric testimony regarding appellant's mental illness, we cannot determine on the present state of the record whether appellant was denied effective assistance of counsel. "When an arguable claim of ineffective assistance of counsel has been made, and there has been no evidentiary hearing in the [trial court] to permit the defendant to develop evidence on the record to support the claim, and to provide the Commonwealth an opportunity to rebut the claim, [the Superior] Court will remand for such a hearing." *Commonwealth v. Petras*, 368 Pa.Super. 372, 377, 534 A.2d 483, 485 (1987). See also: *Commonwealth v. McBride*, 391 Pa.Super. 113, 121, 570 A.2d 539, 543 (1990); *Commonwealth v. Copeland*, 381 Pa.Super. 382, 397, 554 A.2d 54, 61 (1988).

The judgment of sentence is vacated, at least for the time being, and the case is remanded for an evidentiary hearing to determine if a reasonable basis existed for trial counsel's failure to present expert psychiatric evidence for the purpose of reducing the degree of appellant's guilt. If counsel is found to have been ineffective, a new trial must be granted. If counsel was not ineffective, however, the judgment of sentence may be reimposed. Jurisdiction is not retained meanwhile.

POPOVICH, J., files a dissenting opinion.

POPOVICH, Judge, dissenting:

I cannot join in the Majority's determination to vacate the judgment of sentence and remand for an evidentiary hearing on a claim of trial counsel's alleged ineffectiveness. Also, I find it appropriate to address the appellant's assertion attributing the trial court with the commission of reversible error with regard to a portion of the jury charge.

Because the appellant does not challenge the sufficiency of the evidence, I begin my inquiry by observing that the charges filed against the appellant stem from the strangulation and stabbing death of seventeen-year-old Karen Hurwitz.

At the commencement of the jury trial, counsel for the appellant stated in his opening remarks that his job was to defend the appellant for "an act ... he admit[ted] that he committed", i.e., "one 17–year–old [the appellant] took the life of another 17–year–old. And nobody [wa]s disputing that." It was defense counsel's belief that the appellant "couldn't control" himself in the early morning hours of October 27, 1989, when the crimes were committed. As counsel vocalized it: A "rage came over [the appellant] ... [and i]t just so happened that ... Karen Hurwitz was there and was the recipient of his rage." This, argued defense counsel, negated the specific intent necessary to convict his client of first degree murder.

Once the Commonwealth's case-in-chief had been presented, which depicted a brutal, senseless killing of Ms. Hurwitz, the defense produced the testimony of Frank Marshall, a youth worker at a detention center for juveniles (Shuman Center), who had spoken to the appellant the day after his arrest.

Marshall recalled that the appellant heard voices directing him to kill Ms. Hurwitz, which he carried out by means of strangulation and the repeated stabbing of the victim with a thirty-six-inch "Ninja" sword. When Marshall inquired why the appellant had killed the victim, he was told: "I don't know". Additionally, the appellant stated: "Whenever I fe[e]l[ ] that I am going to get into some kind of trouble, I w[ill] put on the Clockwork Orange T-shirt." [1] The appellant was wearing such a T-shirt on the evening in question, and defense counsel argued that the wearing of the T-shirt and his client's viewing of the movie (which was played for

1. "A Clockwork Orange" was a movie directed by Stanley Kubrick in which a group of teenagers, for no apparent reason, committed brutal crimes against people.

the jury at trial) were indicia that the appellant was "out of control" when the killing was committed so as to negative the specific intent needed to convict for murder in the first degree.

Once the jury had been charged, it took less than two hours to find the appellant guilty. Following the denial of post-verdict motions, a life sentence was imposed for the first degree murder conviction, while a consecutive term of seven and one-half to fifteen years imprisonment was ordered on the theft charge.

Two issues are raised by counsel. The first avers that the trial court committed reversible error when it directed the jury that two elements of first degree murder had been established beyond a reasonable doubt. Specifically, with respect to murder of the first degree, the trial court instructed the jury that the prosecution was required to prove three distinct elements: first, the victim was dead; second, the defendant killed the victim; and, third, the defendant did so with a specific intent and with malice. The court went on to observe that:

> Obviously, ladies and gentlemen, the first two have been proven beyond a reasonable doubt, I'm sure. There's no question about those. The one that you really have to consider here is the third element, that the defendant did so, did this killing, with the specific intent to kill and with malice.

N.T. 5/18–21/90 at 224.

It is the appellant's position that the instruction relieved the prosecution of having to prove every essential element of first degree murder; to-wit: " 'By placing a judicial imprimatur' on the prosecution's proof 'with respect to an element of the offense, the faulty instruction directed a partial verdict for the prosecution, ensuring that the jury would not find every essential element beyond a reasonable doubt.' " In other words, the appellant argued that the " 'wrong entity judged the defendant guilty,' thereby rendering the trial fundamentally unfair." Appellant's Brief at 19. I disagree and take my direction from the United

States Supreme Court ruling in *Rose v. Clark,* 478 U.S. 570, 106 S.Ct. 3101, 92 L.Ed.2d 460 (1986).

*Rose* involved a double murder witnessed by the children of one of the victims. The police were told by the children that Stanley Clark had shot their mother and another man.

At trial, one of Clark's defenses was that of diminished capacity. In its charge to the jury, the trial court instructed on the elements of first- and second-degree murder, the latter of which required proof of malice and was defined as "an intent to do any injury to another...." The trial court then charged the jury:

> "All homicides are presumed to be malicious in the absence of evidence which would rebut the implied presumption. Thus, if the State has proven beyond a reasonable ... doubt that a killing has occurred, then it is presumed that the killing was done maliciously. But this presumption may be rebutted by either direct or circumstantial evidence, or by both, regardless of whether the same be offered by the Defendant, or exists in the evidence of the State."

478 U.S. at 574, 106 S.Ct. at 3104.

Clark was found guilty of first degree murder in the killing of the female and second degree murder for the killing of the male. The state court affirmed, but a federal district court reversed on the ground that the malice instruction violated Clark's right to have his guilt established beyond a reasonable doubt under *Sandstrom v. Montana,* 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979) (instruction creating presumption of malice, which shifted the burden of proof of "intent" to the defendant, violates due process).

The Court of Appeals for the Sixth Circuit affirmed, despite substantial evidence of Clark's guilt, because the erroneous burden-shifting instruction was not harmless error.

On appeal the judgment of the Court of Appeals was vacated and the case was remanded. To justify its actions, the United States Supreme Court wrote:

... if the defendant had counsel and was tried by an impartial adjudicator, there is a strong presumption that any other errors that may have occurred are subject to harmless-error analysis. The thrust of the many constitutional rules governing the conduct of criminal trials is to insure that those trials lead to fair and correct judgments. Where a reviewing court can find that the record developed at trial establishes guilt beyond a reasonable doubt, the interest in fairness has been satisfied and the judgment should be affirmed. As we have repeatedly stated, "the Constitution entitles a criminal defendant to a fair trial, not a perfect one."

478 U.S. at 579, 106 S.Ct. at 3106 (Citations omitted). Placed in the preceding context, the Court found that the error—an instruction that impermissibly shifted the burden of proof on malice—was not "so basic to a fair trial" that it could never be harmless. Id. at 580.

Even where the defendant contested intent, and a presumption of malice instruction was given, the harmless error standard was appropriate as a tool to assess the claim. The reasoning for adhering to such a formula, in evaluating an instruction challenged as erroneous, was stated as follows:

... our harmless-error cases do not turn on whether the defendant conceded the factual issue on which the error bore. Rather, we have held that *"Chapman* mandates consideration of the entire record prior to reversing a conviction for constitutional errors that may be harmless." The question is whether, "on the whole record ... the error ... [is] harmless beyond a reasonable doubt." See also *Chapman* [*v. State of California*] 386 U.S. [18] at 24, 87 S.Ct. [824] at 828 [17 L.Ed.2d 705] ("[B]efore a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt"); *Connecticut v. Johnson,* 460 U.S. [73] at 97, n. 5, 103 S.Ct. [969] at 983, n. 5 [74 L.Ed.2d 823] (POWELL, J., dissenting) (in cases of *Sandstrom* error, *"the inquiry is whether the evidence was so*

*dispositive of intent that a reviewing court can say beyond a reasonable doubt that the jury would have found it unnecessary to rely on the presumption").*
478 U.S. at 583, 106 S.Ct. at 3109 (Citations omitted; emphasis added).

In applying these principles to the case at bar, I would hold that the appellant received a full opportunity to place into evidence and make argument to support his claim of diminished capacity. Moreover, counsel for the appellant in his opening and closing remarks conceded that his client committed the murder; the prosecution produced the appellant's written and taped confessions; and the appellant's own witness (Frank Marshall) recounted how the accused told of the events surrounding the murder.

Apart from the challenged first degree murder charge, the jury in this case was instructed clearly that it had to find the appellant guilty beyond a reasonable doubt as to every element of first-, second- and third-degree murder. When placed in the proper perspective, the erroneous first degree murder instruction does not compare with the kinds of errors that automatically require reversal of an otherwise valid conviction. 478 U.S. at 579–580, 106 S.Ct. at 3106–07.

My inquiry has focused on whether the evidence was so dispositive of the first two elements of the three necessary to establish murder in the first degree (i.e., death of victim and the defendant's admission to the killing) that it can be said beyond a reasonable doubt that the jury would have found it unnecessary to rely on the erroneous instruction. See *Commonwealth v. Story*, 476 Pa. 391, 383 A.2d 155 (1978). Thus, the fact that the appellant "admitted" (through his counsel's opening and closing remarks, written and taped confessions and a defense witness) to the first two elements necessary to establish the crime of murder in the first degree (death and complicity), disposition under the harmless error rule is proper and buttresses my conclusion that no error was committed by the trial court. Id.

The second issue, raised by counsel unassociated with prior counsel, claims that trial counsel was ineffective in failing to produce evidence to support a diminished capacity defense, e.g., two psychiatrists (Drs. Vallano and Wettstein) would have testified to his alleged manic-depressive condition.[2] Although trial counsel sought a continuance to produce Dr. Vallano, the trial court denied the request on the ground that trial counsel "had plenty of time to prepare" the case, and his eleventh hour request for a postponement would not be granted.

It is undisputed that:

[P]sychiatric testimony relevant to the cognitive functions of deliberation and premeditation is competent on the issue of specific intent to kill. Thus psychiatric testimony is competent in Pennsylvania on the issue of specific intent to kill if it speaks to mental disorders affecting the cognitive functions necessary to formulate a specific intent.

*Commonwealth v. Weinstein*, 499 Pa. 106, 451 A.2d 1344, 1347 (1982). As for whether trial counsel was ineffective in failing to produce psychiatric evidence to support the appellant's diminished capacity defense, we are required first to determine whether the claim is of arguable merit. If so, we need to inquire whether trial counsel may have had some reasonable basis to forego the underlying claim. And, having satisfied the first two prongs, we are then required to determine if the ineffectiveness of counsel prejudiced the defendant. *Commonwealth v. Pierce*, 515 Pa. 153, 527 A.2d 973 (1987).

No one disputes that trial counsel's failure to produce "available" psychiatric and psychological testimony, where the only issue at trial is of a defendant's state of mind, has been held to have no reasonable basis designed to effectu-

2. All of the witnesses who had been in the appellant's company immediately preceding or subsequent to the killing described him as appearing "normal" and exhibiting no signs reflective of a mental disorder. See N.T. 6/18–21/90 at 64 (Derek Eugene Scott, III); id. at 74 (Rajeev Duckett); id at 99 (Katherine A. Berlin); id. at 103, 106–107 (Marissa Rhodes); id at 155–156 (Detective Terrence P. O'Leary).

ate a client's best interest, and, consequently, warrants a new trial to remedy the nonfeasance. See *Commonwealth v. Potts*, 486 Pa. 509, 406 A.2d 1007 (1979). However, I conclude that trial counsel's failure to produce Dr. Robert Wettstein is not indicative of ineffectiveness.

Even the appellant's counsel notes that Dr. Wettstein "has [only] now examined" the appellant and reviewed his psychiatric history to conclude that he suffers from manic-depressive illness, i.e., *after* the trial had concluded. This *post hac* presentment of Dr. Wettstein excludes him and his diagnosis from the sphere of "available" evidence accessible to counsel *prior* to trial. Therefore, trial counsel cannot be labelled ineffective. Id.

As for Dr. Vallano's proffered diagnosis of the appellant's bipolar disorder, I would note that this evaluation was made while the appellant was awaiting trial (on April 20, 1990) at the Shuman Center. I agree with the Commonwealth that the appellant's offer of proof nowhere represents that Dr. Vallano would have testified that, "within a reasonable degree of medical certainty", the appellant *on the day and time of the criminal incident was suffering from a bipolar episode which impaired his ability to kill Karen Hurwitz.* See Appendix C attached to the Appellant's Brief; Commonwealth's Brief at 16; cf. *Commonwealth v. Heidnik*, 526 Pa. 458, 587 A.2d 687 (1991).

For the reasons herein stated, I would affirm the judgment of sentence.