J-S59006-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| SPENCER K. WALLACE, | |
| Appellant | No. 913 EDA 2016 |

Appeal from the PCRA Order Entered February 24, 2016
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0004469-2009

BEFORE:  BENDER, P.J.E., OTT, J., and FITZGERALD, J.[*]

MEMORANDUM BY BENDER, P.J.E.:          **FILED DECEMBER 08, 2017**

Appellant, Spencer K. Wallace, appeals from the post-conviction court's February 24, 2016 order dismissing his petition filed pursuant to the Post Conviction Relief Act (PCRA), 42 Pa.C.S. §§ 9541-9546.  We affirm.

In a prior Pa.R.A.P. 1925(a) opinion, the trial court described the early procedural history and factual background of Appellant's case as follows:

> [Appellant] was tried from June 14, 2010 to June 18, 2010, before this [c]ourt and a jury on bill of information CP-51-CR-0004469-2009 and found guilty of murder in the first degree, [18 P.S. § 2502(a),] … violation[s] of the Uniform Firearms Act [("VUFA")], [18 P.S. §§ 6106(a)(1), 6108,] and possession of an instrument of crime [("PIC")], [18 P.S. § 907(a),] in connection with the shooting death of Harry Ballard ("Ballard").
>
> On June 18, 2010, [Appellant] was sentenced to life imprisonment on Count 1, charging murder in the first degree; two to seven years['] imprisonment on Count 2, charging [VUFA], Section

_____

[*] Former Justice specially assigned to the Superior Court.

6106, to be served consecutive to the sentence imposed on Count 1; and, one to five years['] imprisonment on Count 4, charging [PIC], to be served consecutive to the sentence imposed on Count 2; no further penalty was imposed on Count 3, [VUFA, Section 6108].

\*\*\*

On July 10, 2008, [Appellant] was trying to track down … Ballard, who owed him $50. He walked a few blocks down from the Queen Lane Apartments to where he believed that Ballard's mother lived. When he got there[,] he yelled out that he was looking for Ballard's mother. Stella Lorick, Ballard's aunt, was told by another person that someone was looking for Ballard's mother, so she came out of her house and spoke to [Appellant]. [Appellant] told her that he wanted the money Ballard owed him. Ms. Lorick told him that if he had an issue with Ballard, he needed to take it up with Ballard and leave "them" alone. [Appellant] then informed Ms. Lorick that if he did not get his money, he would "bring back drama."

Two days later, on July 12, 2008[,] at about 8:00-8:30pm [*sic*], [Appellant] and a few other men were hanging out behind the Queen Lane Apartments next to a play ground [*sic*] where a few residents were enjoying the summer evening with their children. Braheim Ballard ("Braheim"), Harry Ballard's brother, drove up, got out of his car and confronted [Appellant] about [Appellant's] confrontation a few days earlier with Ballard's aunt, Stella Lorick. Braheim yelled at [Appellant] about disrespecting his mother and proceeded to slap [Appellant] in the face. [Appellant] did not retaliate and the fight was broken up by a Philadelphia Housing Authority Officer who was patrolling the area at that moment. Braheim then got back in his car and drove off. The residents who were on the playground with their children witnessed the scene. Afterwards, they overheard [Appellant] tell his friend Robert Shaheem "Sha" Pinkney to go get his gun in the blue city bag. [Appellant's] friends attempted to talk him out of handling the situation this way, but he insisted. Upon receiving the blue city bag containing his gun, he stuck the gun in his waist band [*sic*] and walked around to the front of the Queen Lane Apartments and waited in front of a dry cleaner.

A few minutes later, Ballard walked up to [Appellant] and attempted to make peace for what happened earlier between [Appellant] and Braheim. [Appellant] swung his fist at Ballard,

missed[,] and the two were separated by [Appellant's] friends. [Appellant] then walked up to Ballard in the middle of the intersection of Queen Lane and Pulaski Street and shot Ballard once. Ballard dropped to his knees and then to the ground and began pleading for his life. [Appellant] then proceeded to turn Ballard over and shoot him four more times, three shots entering Ballard's chest. He then fled the scene. Ballard was pronounced dead later that night at a hospital.

Trial Court's Rule 1925(a) Opinion ("TCO"), 10/21/2010, at 1-3 (headings omitted).

Appellant filed a timely appeal from his judgment of sentence, which this Court affirmed on April 12, 2011. ***Commonwealth v. Wallace***, 29 A.3d 831 (Pa. Super. 2011) (unpublished memorandum). Appellant did not file a petition for *allocatur* to our Supreme Court. Thereafter, on March 16, 2012, Appellant filed a *pro se* PCRA petition.[1] Subsequently, Appellant obtained counsel and amended his PCRA petition multiple times.[2] On January 14, 2016,

_____

[1] At the outset, we acknowledge that Appellant's petition is timely. ***See*** 42 Pa.C.S. § 9545(b) ("Any petition under this subchapter, including a second or subsequent petition, shall be filed within one year of the date the judgment becomes final…."). Appellant's judgment of sentence became final on May 12, 2011, and he had one year from that date to file a timely PCRA petition. ***See*** 42 Pa.C.S. § 9545(b)(3) (stating that a judgment of sentence becomes final at the conclusion of direct review or the expiration of the time for seeking the review); Pa.R.A.P. 1113 ("[A] petition for allowance of appeal shall be filed with the Prothonotary of the Supreme Court within 30 days after the entry of the order of the Superior Court or the Commonwealth Court sought to be reviewed."). As Appellant filed his PCRA petition on March 16, 2012, it is timely and we may proceed to the merits.

[2] Initially, the PCRA court appointed counsel for Appellant. However, Appellant later privately retained an attorney, and court-appointed counsel withdrew. ***See*** Appellant's Brief at 4.

- 3 -

the PCRA court issued a Pa.R.Crim.P. 907 notice of its intent to dismiss Appellant's petition, to which Appellant filed a response. On February 24, 2016, the PCRA court dismissed Appellant's petition, stating that it lacks merit. *See* PCRA Order, 2/24/2016, at 1 (single page).

Appellant filed a timely notice of appeal. The PCRA court instructed Appellant to file a Pa.R.A.P. 1925(b) statement of errors complained of on appeal, and he timely complied. The PCRA court did not file a Rule 1925(a) opinion.[3]

On appeal, Appellant raises the following issues for our review:

I. Was trial counsel ineffective for failing to object to the court's charge on VUFA and PIC which directed a verdict against his client?

II. Was trial counsel ineffective for not objecting to the court['s] giving the jury its personal opinion of the evidence as to [Appellant's] possession of the firearm with intent to commit murder?

III. Was trial counsel ineffective because he failed to object to the court's charge that highlighted uncontradicted facts because it encouraged the jury to give far more credence to testimony that was uncontradicted based on that fact alone and also focused the jury's attention on [Appellant's] failure to testify so as to contradict such facts?

_____

[3] "Ordinarily, the remedy for non-compliance with the Pa.R.A.P. 1925(a) is a remand to the trial court with directions that an opinion be prepared and returned to the appellate court." *See Commonwealth v. Hood*, 872 A.2d 175, 178 (Pa. Super. 2005) (citation omitted). However, our review of the record adequately informs us of the PCRA court's determination that Appellant's issues lack merit. *See id.* Therefore, we decline to remand this matter to the PCRA court for the preparation of a Rule 1925(a) opinion and, instead, evaluate the merits of Appellant's claims. *Id.*

- 4 -

IV. Was trial counsel ineffective for failing to object to the charge of the court which equated malice with specific intent to kill and by so doing omitted an element of the crime of first[-]degree murder?

V. Was trial counsel ineffective for failing to move for a mistrial after he objected to the testimony from [Ballard's] mother that her son was a "straight[-]A" honor student?

Appellant's Brief at 6 (unnecessary capitalization omitted).

Our standard of review regarding an order denying post-conviction relief is whether the findings of the PCRA court are "supported by the record and free of legal error." *Commonwealth v. Albrecht*, 994 A.2d 1091, 1093 (Pa. 2010) (citations omitted). With respect to Appellant's ineffectiveness claims,

> [an a]ppellant is required to plead and prove by a preponderance of the evidence … that the conviction or sentence resulted from … ineffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place. It is the ineffectiveness claim, not the underlying error at trial, which is reviewed. To establish ineffectiveness, [the] appellant must show: (1) the claim has arguable merit; (2) counsel had no reasonable strategic basis for his or her action; and (3) but for the errors and omissions of counsel, there is a reasonable probability that the outcome of the proceedings would have been different. [An a]ppellant bears the burden of proving all three prongs, failure to prove any of these prongs is sufficient to warrant dismissal of the claim without discussion of the other two.

*Commonwealth v. Robinson*, 877 A.2d 433, 439 (Pa. 2005) (internal citations and quotation marks omitted).

We consider Appellant's first and second issues together.[4] Appellant argues that "trial counsel was ineffective for failing to object to the court's charge on VUFA and PIC which directed a verdict against his client." Appellant's Brief at 9 (unnecessary capitalization omitted). Further, Appellant states that, if the PIC charge is not considered a directed verdict, "it surely is the court['s] providing the jury with its own person[al] opinion…." *Id.* at 15.

> The trial court imparted the following jury charge for the offense of PIC:
>
> Finally, I would like to define for you the crime of [PIC].
>
> In order to find [Appellant] guilty of this offense, you have to find, first of all, that [Appellant] possessed a firearm. To possess an item, [Appellant] must have the power to control it and the intent to control it.
>
> Secondly, that the firearm was an instrument of crime. An instrument of a crime is anything that is used for criminal purposes and possessed by a defendant at the time of the alleged offense under circumstances that are not manifestly appropriate for any lawful uses it might have.
>
> And in this case[,] the facts show that a firearm was used to commit a murder, so the first two elements — the second element, that the firearm was an instrument of a crime, has been proven by the facts of this case that are not contradicted; and that [Appellant] possessed the firearm with the intent to attempt or commit a crime with it — in this case[,] the crime of murder.
>
> So what you have to decide is whether or not [Appellant] possessed a firearm.

N.T., 6/18/2010, at 142-43. *See also* Appellant's Brief at 9.

---

[4] We address these issues together because Appellant makes the same arguments for each claim. *See* Appellant's Brief at 16 ("Appellant makes the same arguments as to Claim I for this claim, and incorporates them by reference here.").

Appellant complains that "[t]he court may have left the question of whether or not [Appellant] possessed a firearm to the jury. But, it did not leave [Appellant's] intent to the jury — the court declared that [the firearm] was [possessed with] 'the intent to attempt to commit … murder.'" *Id.* at 10 (internal citation omitted). He asserts that the instruction was improper because "[t]he trial court must not direct a verdict nor express an opinion on the merits of the defense offered." *Id.* at 9-10 (citations omitted). He claims "[a] directed verdict is simply the court['s] telling the jury what to find — and here the court did just that." *Id.* at 12. We disagree.

In *Commonwealth v. Anderson*, 600 A.2d 577 (Pa. Super. 1991), a jury convicted the appellant of, *inter alia*, first-degree murder. In contesting that conviction, Appellant argued that the "trial court improperly charged the jury that the first two elements of first[-]degree murder had been established beyond a reasonable doubt, thereby directing a verdict as to those elements." *Id.* at 578. On appeal, we rejected this contention, observing that "it was conceded by the defense that [the] appellant had killed the victim[,]" and that the issue at trial was whether the appellant "had lacked the specific intent to kill which was necessary for a finding of first[-]degree murder." *Id.* at 578-79. Ultimately, we explained that "[b]ecause [the] appellant admitted the killing and contested only the degree of guilt, the trial court did not err when it told the jury that the victim was dead and that [the] appellant had killed her." *Id.* at 579. Additionally, we noted that "by instructing the jury that it should focus on whether [the] appellant had acted with malice and with the

specific intent to kill, the court fulfilled its principal duty of clarifying the issues so that the jury might understand the questions to be resolved." ***Id.*** (citations, original brackets, and internal quotation marks omitted).[5]

Similarly, in the case *sub judice*, the facts adduced at trial indisputably indicated that Ballard had been shot five times, with three of those shots entering his chest. ***See*** TCO at 3. At trial — probably because of these very facts — Appellant did not challenge whether the shooter used the firearm with the intent to commit a crime, namely murder. Instead, Appellant argued at trial that the evidence did not prove that he was the ***person*** that possessed the firearm used to commit the murder. In other words, he claimed that ***he*** did not shoot Ballard.[6] Therefore, the trial court acted appropriately in

---

[5] ***See also Commonwealth v. Schultz***, 87 A.2d 69, 72 (Pa. Super. 1952) (concluding that the trial court's charge, in which it characterized some facts as being "fairly well proven[,]" was not erroneous because "the fact that a crime had been committed was undisputed; the question was [the] appellant's connection with it") (citation omitted).

[6] For instance, in the opening statement, Appellant's counsel said that "[the jury will] be receiving no evidence that implicates [Appellant] that is neutral, unbiased, untainted. You will hear no independent scientific physical evidence that in any way, shape or form supports a theory ***that [Appellant] is the person responsible for committing this act***." N.T., 6/16/2010, at 44 (emphasis added). Likewise, during closing arguments, defense counsel asserted, "What's going on here is that after my client's accused, based on everything that I just discussed with you, this was a piling on process. There was not, however, a meaningful, fair, objective, open-minded investigation." N.T., 6/18/2010, at 66. ***See also id.*** at 67 ("So there was no follow-up investigation, reliable investigation. It was, hey, if you want to come in and pile on the decision I made…, come on in. Because if you say it's [Appellant], I'm going to put it on paper, put it in the file and throw it on 12 citizens' laps sometime down the road."); ***id.*** at 83 ("Because the Commonwealth is going

clarifying the issues for the jury, by directing them to focus on determining whether Appellant possessed the firearm used to kill Ballard, rather than on the uncontested issue of whether the shooter used the firearm with the intent to commit a crime. Moreover, because the court's instruction corresponded with the issues raised at trial, we do not characterize the PIC charge as improperly conveying the trial court's opinion. As such, we conclude that these claims have no arguable merit, and Appellant's trial counsel was not ineffective on these grounds.[7]

Next, referring to the same PIC charge quoted *supra*, Appellant insists that "trial counsel was ineffective because he failed to object to the court's charge that highlighted uncontradicted facts because it encouraged the jury to give far more credence to testimony that was uncontradicted based on that fact alone and also focused the jury's attention on [Appellant's] failure to

_____

to say, listen, we don't have just one, we don't have two, we have all these witnesses that say [Appellant]. But you look at the quality of where it all started here and what was done to really prove this case. And if it fit with [Appellant], great. But if it was an objective, neutral, or some fair opportunity to conduct an investigation, nothing, nothing.").

[7] Appellant does not develop his argument concerning why trial counsel was ineffective for failing to object to the trial court's VUFA charge. Accordingly, we deem this issue waived. **See Commonwealth v. Phillips**, 141 A.3d 512, 522 (Pa. Super. 2016) ("[A]rguments which are not appropriately developed are waived. Thus, issues raised in a Brief's Statement of Questions Involved but not developed in the Brief's argument section will be deemed waived.") (citations omitted). Nevertheless, even if not waived, we would determine that the trial court, again, appropriately clarified the issues for the jury by narrowing its focus to resolving the contested matter of whether Appellant had a firearm. **See** N.T., 6/18/2010, at 141-42.

testify so as to contradict such facts." Appellant's Brief at 17 (unnecessary capitalization omitted).[8] Appellant argues that "[t]he fact that the evidence is not contradicted does not make it proven or true. The court's charge quoted above encouraged the jury to decide other issues of fact based on the fact that the evidence was not contradicted, and that is a due process violation." *Id.* In addition, Appellant maintains that "when the Commonwealth's evidence is uncontradicted and the defendant could have contradicted it, such a jury instruction focuses the jury's attention on the fact that the defendant did not testify, again a due process violation." *Id.*

This Court has previously stated that "[i]n reviewing jury instructions to determine whether reversible error has been committed by a trial court, we consider the charge as a whole. Error will not be predicated on isolated excerpts. Rather, it is the general effect of the charge that controls." *Anderson*, 600 A.2d at 526 (citations omitted). Here, the trial court advised the jury:

> It is my responsibility to decide all questions of law and you have to follow all my rulings and orders concerning matters of law. I

---

[8] To be exact, Appellant contests the portion of the charge stating:

> And in this case the facts show that a firearm was used to commit a murder so the first two elements — the second element, that the firearm was an instrument of a crime, **has been proven by the facts of this case that are not contradicted**; and that [Appellant] possessed the firearm with the intent to attempt to commit a crime with it — in this case the crime of murder.

Appellant's Brief at 17 (quoting N.T., 6/18/2010, at 143; emphasis added by Appellant).

am not, however, the judge of the facts. It's not for me to decide what the true facts are concerning the charges brought against [Appellant] in this case. **_You, the jury, are the sole judges of the facts. It will be your responsibility to weigh the evidence, to find the facts based on the evidence and the logical inferences that flow from those facts, and then to decide whether or not [Appellant] has been proven guilty of any of the charges brought against him._**

**_In determining the facts, you are to consider only the evidence that was presented in court and any logical inferences that flow from that evidence._**

You are not to rely on my supposition or guess about matters that are not in evidence. **_You should not regard as true any evidence that you find to be incredible even if it is uncontradicted._**

Your determination of the facts should not be based on sympathy for or prejudice against [Appellant] or the crime or on which attorney, if any, you like better or which attorney, if any, you think made a better closing argument.

In my instructions to you, I may, but if I do, it will be to a very limited extent, I may refer to some of the evidence. I certainly will not refer to all the evidence. I leave that to your recollection because as I've told you several times, it is your recollection and yours alone that counts. **_You are not bound by my recollection nor by the recollection of the attorneys and their arguments to you nor are you limited in your consideration of the evidence to only the evidence that I or the attorneys have brought to your attention. Because as I told you before, it is your responsibility when deliberating on the verdict to consider all of the evidence that you believe to be material to the issues involved._**

\*\*\*

Now, it is entirely up to a defendant in every criminal trial to decide whether or not to testify. The defendant, as I told you, has an absolute right founded on both the Constitution of the United States and the Constitution of Pennsylvania to remain silent. **_You must not draw any inference of guilt or any other inference adverse to [Appellant] from the fact that in this case he chose not to testify._**

- 11 -

N.T., 6/18/2010, at 121-23, 134 (emphasis added).

Looking at the jury instructions as a whole, the trial court imparted that the jury *solely* makes factual determinations, it should consider *all* of the evidence that it believed to be material to the issues involved, and that jury members should "not regard as true any evidence that [they found] to be incredible even if it is uncontradicted." *Id.* at 121, 122, 123. Furthermore, the trial court advised the jury that it "must not draw any inference of guilt or any other inference adverse to [Appellant] from the fact that in this case he chose not to testify." *Id.* at 134. Additionally, by pointing out that uncontradicted facts supported that the firearm was used as an instrument of crime, the trial court sought to clarify the issues for the jury by weeding out matters that Appellant did not contest. Accordingly, we conclude that this claim also has no arguable merit.

In Appellant's next issue, he claims that "trial counsel was ineffective for failing to object to the charge of the court which equated malice with specific intent to kill and by so doing omitted an element of the crime of first degree murder." *See* Appellant's Brief at 20 (unnecessary capitalization omitted). Appellant alleges that "[t]he court's charge wrapped all of first-degree murder's elements into malice which was defined as a specific intent to kill, allowing the jury to ignore the other aspects of malice[,]" which Appellant describes as being "the dictate of a wicked, depraved and malignant heart." *Id.* at 22 (quoting *Commonwealth v. Bolish*, 113 A.2d 464, 471 (Pa. 1955)). According to Appellant, "[t]he court ignored the element of

malice which must accompany specific intent to kill and required the jury to view the events through a lens that required only a quick formulation of specific intent to kill without the element of malice." *Id.* at 25 (footnote omitted). Appellant asserts that counsel should have objected to the charge, as "[p]roceeding to [a] verdict when an element of the crime (malice) has been omitted from the court's charge is ineffectiveness of counsel." *Id.* at 26.

Our Supreme Court has stated that "[w]hen evaluating jury instructions, the charge must be read as a whole to determine whether it was fair or prejudicial." *Robinson*, 877 A.2d at 444 (citation omitted). Additionally, "[t]he trial court has broad discretion in phrasing its instructions, and may choose its own wording so long as the law is clearly, adequately, and accurately presented to the jury for its consideration." *Id.* (citation omitted).

In the case at bar, the trial court instructed the jury regarding first-degree murder as follows:

> [Appellant] is charged with taking the life of the decedent, Harry Ballard, by criminal homicide. There are four possible verdicts that you might reach on the charges of murder: Not guilty or guilty to murder in the first degree or murder in the third degree.
>
> Before defining each of these crimes, I want to tell you about malice. Malice is an element of murder but not – well, it's an element of murder. A person who kills has to act with malice to be guilty of any degree of murder.
>
> The word "malice" as I am using it has a special legal meaning. It doesn't mean simply hatred, spite, or ill will. Malice is a shorthand way of referring to any one of two different mental states that are relevant here that the law regards as being bad enough to make a killing murder. And the type of malice is different for each degree of murder.

- 13 -

For murder of the first degree, a killing is with malice if the perpetrator acts, first, with an intent to kill; and, as I will explain later when I further define first-degree murder, the killing is willful, deliberate and premeditated.

For murder of the third degree, a killing is with malice if the perpetrator's actions show a wanton and willful disregard of an unjustified and extremely high risk that his conduct would result in death or serious bodily injury to another.

In this form of malice, the Commonwealth doesn't have to prove that the perpetrator intended to kill the victim, but the Commonwealth must prove that he took action while consciously[,] that is, knowingly disregarding the most serious risk he was creating, and that by his disregard of that risk he demonstrated an extreme indifference to the value of human life.

\*\*\*

I will now define for you the crime of first-degree murder. As I said, there are four possible verdicts you can reach with regard to murder: Not guilty or guilty of first-degree murder, not guilty or guilty of third-degree murder.

First-degree murder is a murder in which the perpetrator has the specific intent to kill. In order to prove [Appellant] guilty of first-degree murder, the Commonwealth has to prove three elements: One, that the victim is dead. And there's no question about that.

Two, that [Appellant] killed the victim.

And, three, that [Appellant] killed the victim with the specific intent to kill and with malice.

Malice, for purposes of first-degree murder, is a specific intent to kill or the killing is willful, deliberate and premeditated.

A specific intent to kill exists if [Appellant] has a fully formed intent to kill and is conscious of that intention.

A killing by a person with a specific intent to kill is a killing with malice.

A killing is with specific intent to kill if it is willful, deliberate and premeditated.

The specific intent to kill, including the premeditation needed for first-degree murder, does not require planning or previous

- 14 -

thought or any particular length of time. It can occur quickly. All that is necessary is that there be enough time so that [Appellant] can and does fully form an intent to kill and is conscious of that intention.

When deciding whether or not [Appellant] had the specific intent to kill, you should consider all the evidence regarding his words and conduct and the attending circumstances that might show his state of mind.

If [Appellant] used a deadly weapon on a vital part of the victim's body, this may be regarded as an item of circumstantial evidence from which malice can be inferred. And I charge you that a firearm is a deadly weapon and that the heart and lungs and aorta are vital parts of the body.

N.T., 6/18/2010, at 135-39.

We discern no error in the trial court's instruction equating malice with specific intent to kill. In fact, in **Robinson**, our Supreme Court determined that the appellant's trial counsel was not ineffective for not objecting to a similar charge that equated specific intent to kill with malice. **See Robinson**, 877 A.2d at 444-45. In that case, the trial court charged, *inter alia*, that "[a] killing is with malice if it is done with a specific intent to kill[,]" and that "[i]f a person has a specific intent to kill … that constitutes malice, and it is the specific intent to kill with malice that raises third degree murder to first degree murder." **Id.** at 444. Our Supreme Court concluded that "the trial court gave a comprehensive explanation of all the elements of both first and third degree murder in the initial charge[,]" and "[t]hese charges, read as a whole, provided ample guidance for the jury's deliberations." **Id.** at 445. Here, we likewise conclude that the trial court's instruction "clearly, adequately, and

accurately" presented the law to the jury for its deliberations. *See id.* at 444. Therefore, Appellant's claim, again, has no arguable merit.

Finally, Appellant asserts that "trial counsel was ineffective for failing to move for a mistrial after he objected to the testimony from [Ballard's] mother that her son was a 'straight[-]A honor student.'" Appellant's Brief at 27 (unnecessary capitalization and some internal quotation marks omitted). Appellant avers that "[t]his testimony was not only irrelevant, but it introduced [Ballard's] character and made the slaying even more tragic since it appeared the deceased had unlimited potential." *Id.* at 28. Appellant points out that "[w]hile trial counsel objected, he made no accompanying motions. He failed to move for a mistrial or curative instructions, and by so doing waived his right to challenge the error on direct appeal." *Id.*

> The testimony challenged by Appellant consisted of the following:
>
> [The Commonwealth:] Do you recall, when did the drug problem begin for [Ballard], if you know?
>
> [Renee Ballard:] When he was in the military.
>
> [The Commonwealth:] Okay. And about how old was he at that time?
>
> [Renee Ballard:] Twenty-one, twenty-two. I'm really —
>
> [The Commonwealth:] That's all right. So about when he was in his early twenties —
>
> [Renee Ballard:] Yes.
>
> [The Commonwealth:] — until he was 41?
>
> [Renee Ballard:] Uh-huh.

[The Commonwealth:] Okay. You said he started in the military with the drugs. Did [Ballard] have any education prior — like what was his education prior to going into the military?

[Renee Ballard:] High school —

[Appellant's counsel:] Objection.

[The court:] Overruled.

[The Commonwealth:] You can answer that question.

[Renee Ballard:] High school graduate, Milton Hershey alumni.

[The Commonwealth:] Milton Hershey is a —

[Renee Ballard:] Milton Hershey is a boarding school up in Hershey, Pennsylvania. He was a graduate, straight-A honor student from there, and then he was a member of the alumni.

[The Commonwealth:] But then he fell into drug use at some point after that.

[Renee Ballard:] Yes, yes.

N.T., 6/16/2010, at 54-55.

"A trial court may grant a mistrial only where the incident upon which the motion is based is of such a nature that its unavoidable effect is to deprive the defendant of a fair trial by preventing the jury from weighing and rendering a true verdict." *Commonwealth v. Manley*, 985 A.2d 256, 268 (Pa. Super. 2009) (citation omitted). Here, while in the midst of discussing Ballard's decades-long drug problem, Ballard's mother testified that her son had been a straight-A honor student in high school, roughly *twenty years* before the murder occurred. We cannot fathom that this lone statement prevented the jury from weighing and rendering a true verdict. *Compare Commonwealth v. Story*, 383 A.2d 155, 157-61 (Pa. 1978) (determining that the appellant was denied a fair trial where the Commonwealth elicited

- 17 -

testimony that the deceased victim left a widow with a handicapped daughter "who attended school at the home for crippled children[,]" the widow was forced to begin working following her husband's death, and the victim had been well-respected in the community in which he worked) **with Commonwealth v. Clifton**, 414 A.2d 686, 689 (Pa. Super. 1979) (determining that testimony referring to the victim's professional relationship with the witness, family service to the community, and military service was not so inflammatory and prejudicial as to warrant a new trial).[9]  Accordingly, this assertion has no arguable merit, and Appellant's last ineffectiveness claim fails, as well.

Order affirmed.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/8/2017

---

[9] We further point out that the trial court instructed the jury that its "determination of the facts should not be based on sympathy for or prejudice against [Appellant]…."  N.T., 6/18/2010, at 122.

- 18 -